# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 58

### APRIL TERM, A.D. 2013

### May 10, 2013

DANIEL B. WALKER,

Appellant
(Defendant),

v.                                                                              No. S-12-0195

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Campbell County*
*The Honorable Dan R. Price, II, Judge*

**Representing Appellant:**

Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

**Representing Appellee:**

Gregory A. Phillips, Attorney General; David L. Delicath, Deputy Attorney General; Meri V. Geringer, Senior Assistant Attorney General; Theodore R. Racines, Senior Assistant Attorney General.  Argument by Ms. Geringer.

*Before KITE, C.J., HILL, BURKE, DAVIS, JJ., and GOLDEN, J., Retired.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Justice.**

[¶1]    Appellant, Daniel Walker, challenges his conviction for felony stalking, in violation of Wyo. Stat. Ann. § 6-2-506(e)(iv).  He contends that the amended information did not allege facts sufficient to constitute the offense of felony stalking and did not adequately inform him of the charges against him.   Appellant also claims that the jury was not properly instructed with respect to the intent element of the crime, resulting in plain error.  We find no error in the district court's decision permitting the State to amend the information and also conclude that Appellant was adequately informed of the charges. We agree, however, with Appellant's contention that the jury was not properly instructed regarding the elements of the crime. As a result, we reverse and remand for a new trial.

## ISSUES

[¶2]    Appellant presents the following issues:

> 1. Did the trial court abuse its discretion when it allowed the State to amend the felony information?
>
> 2. Was Mr. Walker denied his constitutional right to adequate notice of the charge he must defend against, as provided for under the federal and the Wyoming Constitutions, and the Wyoming Rules of Criminal Procedure?
>
> 3. Did plain error result when the trial court provided a confusing and misleading jury instruction which combined two of the elements of stalking and instructed the jury that both of those elements were met upon the State establishing a combination of certain actions by Mr. Walker?

The State phrases the issues in a substantially similar manner.

## FACTS

[¶3]    Appellant and the victim, Angelia Leair, married in 1989 and separated in September, 2006.  The marriage produced two children.  In July, 2006, while Appellant and Ms. Leair were still married, Ms. Leair went to a bar with a friend without telling Appellant.  When she returned home, Appellant confronted her about some checks she had written that night.  Appellant became angry and hit her with a checkbook.  He then retrieved a rifle from the gun cabinet in their bedroom and threatened to commit suicide.

1

Ms. Leair called the police and Appellant was arrested. Criminal charges were later filed against Appellant, but Ms. Leair apparently chose not to cooperate with the prosecution and the State eventually dismissed the charges.

[¶4] At Ms. Leair's request, Appellant moved out of their home in September, 2006. A few weeks later, Ms. Leair obtained a protection order against Appellant, which remained in effect until January, 2007. The order stated that Ms. Leair had been the victim of an act of domestic abuse as defined by Wyo. Stat. Ann. § 35-21-102(a)(iii) and provided that Appellant "shall not initiate contact with [Ms. Leair] anywhere either directly or indirectly." (Emphasis omitted.) In February, 2007, after the protection order expired, Appellant had regular contact with Ms. Leair at her place of employment on his delivery route for the United Parcel Service. During one such interaction on February 15, 2007, Appellant became angry with Ms. Leair and called her employer to report that she had been having an affair with her boss, an allegation that Ms. Leair denied. Appellant's conduct caused a significant delay in Ms. Leair's advancement from temporary to permanent employment.

[¶5] Two months after that incident, in April, 2007, Appellant followed Ms. Leair in his vehicle after she picked up their son from a friend's house. Appellant overtook Ms. Leair on the highway and "slammed on his brakes" in front of her. Ms. Leair drove around Appellant and proceeded to the Sheriff's Department to report the incident. Appellant was subsequently charged with reckless driving. After pleading guilty, he received a sentence of thirty days in jail, which was suspended in favor of six months of unsupervised probation, to be served from April, 2008 to October, 2008. As a condition of probation, Appellant was ordered to have no contact with Ms. Leair. Additionally, due to Appellant's conduct, Ms. Leair obtained a second protection order, which remained in effect until October, 2007. That protection order was later extended to April, 2008 on Ms. Leair's motion.

[¶6] In May, 2007, while the second protection order was still in effect, Appellant entered Ms. Leair's home when she was not there and prayed over her bed. Four days later, Appellant left a voicemail on Ms. Leair's phone. As a result of these incidents, Appellant was charged with, and pled guilty to, two counts of violation of a protection order. Appellant was again sentenced to thirty days in jail, but that sentence was also suspended in lieu of six months of unsupervised probation.

[¶7] While Appellant was on probation for his reckless driving conviction, he violated the conditions of his probation by sending a text message to Ms. Leair stating that he was praying for her and asking her to "ask Jesus into your heart." During March, April, and May, 2009, Appellant repeatedly sent Ms. Leair text messages stating that he was praying for her and asking for her forgiveness. Ms. Leair responded to some of these messages by asking Appellant to stop praying for her, to stop harassing her, and to leave her alone.

[¶8]   In July, 2009, shortly after Ms. Leair was remarried, she and her new husband encountered Appellant at a Wal-Mart store.  Appellant confronted Ms. Leair about an issue relating to the custody of their children and then began to yell at Mr. Leair, asking him how it felt to steal his family and telling him that "he wasn't a real man."  Ms. Leair did not report the incident at the time, but testified at trial that she was "really scared" and felt like she could not go anywhere that she might run into Appellant.  Several months later, Ms. Leair received a text message from Appellant asking for financial support. After Ms. Leair responded by asking Appellant to stop harassing her and to leave her alone, Appellant sent a message stating that "In the name of [J]esus [I] rebuke you."

[¶9]   In October, 2009, Ms. Leair and her husband again encountered Appellant at Wal-Mart.  As she and her husband were leaving the store, Ms. Leair saw Appellant driving his vehicle toward them.  He began honking his horn and yelling out of his window at Ms. Leair and her husband.  As a result of this incident, Ms. Leair obtained an "Ex parte Stalking Order of Protection" on November 6, which remained in effect "until further order of the court."  Appellant violated this order on November 29 by calling Ms. Leair's phone and leaving a voicemail.  Ms. Leair reported the incident to the police, and Appellant was arrested and charged with a violation of the order.  Appellant was released from custody on February 25, 2010, on the condition that he would have "no contact, direct or indirect" with Ms. Leair.

[¶10]  In December, 2009, Ms. Leair obtained a "Stalking Order of Protection" against Appellant.  The order stated that "After hearing the testimony of the parties and their witnesses, the Court finds that the Respondent's conduct constitutes stalking as defined by W.S. § 6-2-506(b) and that an Order of Protection should be entered."  The order provided that Appellant "shall not personally, or through any other person or means, contact, harass, stalk, threaten, intimidate, or otherwise interfere with . . . Angelia Leair or David Leair."  The order remained in effect until December, 2010.

[¶11]  Three months later, in March, 2010, Ms. Leair and her daughter were at Wal-Mart shopping for a cell phone.  According to Ms. Leair's testimony, Appellant approached them from behind and said "[W]ow, you must be making a lot of money these days." Appellant was standing approximately four feet away from Ms. Leair when he made this comment.  Ms. Leair immediately left the store with her daughter and reported the incident to the police.

[¶12]  Following the incident on March 20, the State charged Appellant with felony stalking under Wyo. Stat. Ann. § 6-2-506(b)(e)(iv) (LexisNexis 2009).  The information alleged that "on or about March 20, 2010," Appellant, "with the intent to harass another person, engaged in a course of conduct reasonably likely to harass that person and the defendant committed the offense in violation of a permanent order of protection."  After a

jury trial, Appellant was found guilty of felony stalking. On appeal to this Court, however, we overturned Appellant's conviction because of error in the jury instructions. *Walker v. State*, 2012 WY 1, ¶ 13, 267 P.3d 1107, 1112 (Wyo. 2012).

[¶13] After the case was remanded to the district court, the State filed a motion to amend the felony information to specify a range of dates within which Appellant's course of conduct was alleged to have occurred. The district court granted the motion. As amended, the information alleged that Appellant,

> on or between July 9, 2006 through March 20, 2010, in Campbell County, Wyoming, did with the intent to harass another person, [Angelia] Leair, engage[] in a course of conduct reasonably likely to harass that person and the defendant['s] conduct was in violation of a permanent order of protection issued in Campbell County Circuit Court on December 18, 2009 which expired on December 20, 2010 (ST 2009-0050) said offense being **Stalking** in violation of Wyoming Statute § 6-2-506(b)(e)(iv)[.]

(Emphasis in original.)

[¶14] Approximately one month later, the State moved to amend the information for a second time. The second amended information provided that Appellant,

> on or between July 9, 2006 through March 20, 2010, in Campbell County, Wyoming, did with the intent to harass another person, [Angelia] Leair, engage[] in a course of conduct reasonably likely to harass that person and the defendant's conduct was in violation of a temporary, or permanent order of protection, or conditions of probation or bond, issued in Campbell County Circuit Court as outlined in the affidavit of probable cause said offense being **Stalking** in violation of Wyoming Statute § 6-2-506(b)(e)(iii) and (iv)[.]

Appellant objected to the State's motion, claiming that the State "should have requested the amendments it is now seeking at the Arraignment and by failing to do so has waived [its] right to seek additional amendments." On the same day, however, Appellant filed a motion for a bill of particulars with respect to the first amended felony information. In that motion, Appellant claimed that the first amended information "fails to describe what conduct of the Defendant that is alleged to have violated the statutes under which he has been charged." The State responded to Appellant's motion by identifying the dates of the specific acts comprising the alleged "course of conduct" and the dates of the various

4

protection orders entered against Appellant. The State noted that all of the facts contained in its response had been included in the amended affidavit of probable cause accompanying the first amended information and had been testified to at the original trial.

[¶15] At a pretrial hearing held on April 11, 2012, the district court addressed the State's motion for a second amended felony information and Appellant's motion for a bill of particulars. After determining that amending the information would not cause prejudice to Appellant, the district court granted the State's motion. With respect to Appellant's motion for a bill of particulars, Appellant's counsel acknowledged at the pretrial hearing that the State's response "essentially takes care of what would be included in a Bill of Particulars." The district court agreed, stating that "with the [State's] response[,] the Motion for [a] Bill of Particulars is essentially moot and the purpose [of] allowing a defendant to know what the charges are and be in a position to defend has been adequately responded to by the State[.]"

[¶16] The matter proceeded to trial for a second time, and a jury again found Appellant guilty of felony stalking. Appellant timely filed this appeal. Additional facts will be set forth as necessary in the discussion below.

## *DISCUSSION*

### Amendment to Felony Information

[¶17] As noted above, this is the second time this case has been before this Court. In order to place the State's amendment to the felony information in context, we discuss the decision in *Walker I* in more detail here. In *Walker I*, we noted that the only incident of harassment identified in the charging documents was Appellant's encounter with the victim on March 20, 2010:

> The Felony Information merely stated that the appellant violated the felony stalking statute due to an incident on March 20, 2010. The Affidavit of Probable Cause elaborated only slightly – the Wal-Mart incident of March 20 is detailed, but no information is given regarding additional incidents of harassment on the part of the appellant directed at his ex-wife. The only indication provided to the appellant that this charge stemmed from a course of conduct of harassment, rather than solely the March 20 incident, was that a permanent order of protection had been in place at the time of this incident. No information was provided, however, as to any prior acts of harassment by the appellant.

*Id.*, ¶ 8, 267 P.3d at 1110-11. Rather than identifying the alleged incidents of harassment in the charging documents, the State sought to establish a "course of conduct" by introducing Appellant's prior acts of harassment as uncharged misconduct under W.R.E. 404(b). We explained that this approach effectively reduced the State's burden of proof and eliminated one of the necessary elements of the crime:

> The first mention of any details regarding a course of conduct of harassment appears in the State's Notice of Intent to Introduce W.R.E. 404(b) Evidence. Rule 404(b), however, governs evidence of "***other*** crimes, wrongs, or acts," often referred to as uncharged misconduct. In the instant case, as in all stalking cases, the course of conduct ***is*** the criminal act at issue; it is not uncharged misconduct. The March 20 incident was just one part of the alleged course of conduct that should have been charged, and the alleged course of conduct had to be proved beyond a reasonable doubt. Instead, the district court conducted a *Gleason* hearing and admitted the prior incidents as uncharged misconduct evidence. Then, at trial, the district court repeatedly instructed the jury, verbally and in writing, that these acts need only be proved by a preponderance of the evidence.

*Id.*, ¶ 9, 267 P.3d at 1111 (emphasis in original). We further noted that the confusion as to the elements of the crime was echoed in a remark by defense counsel during closing arguments. Defense counsel stated that "I have lost count of how many times this jury was instructed that all of those incidents in 2006, 2007, 2008, 2009 were only for a limited purpose. They can be used by you for the purpose of establishing course of conduct, only. ***One piece of all the elements that the State has to prove. This case is about March 20, 2010.***" *Id.*, ¶ 12, 267 P.3d at 1111-12 (emphasis in original). We concluded that

> Actually, this case was about the other acts as much as it was about the act of March 20. It was not enough for the State to prove beyond a reasonable doubt that the appellant harassed his ex-wife on March 20; the State had to prove beyond a reasonable doubt that the appellant engaged in a course of conduct of harassment. The jury was not properly instructed in that regard and this failure was prejudicial to the appellant.

*Id.*, ¶ 12, 267 P.3d at 1112. Consequently, we reversed Appellant's conviction and remanded to the district court for a new trial. On remand, the State amended the defective information to specify a range of dates within which Appellant's course of

6

conduct was alleged to have occurred. As discussed in further detail below, the State also submitted an amended affidavit of probable cause identifying the dates of Appellant's harassing conduct and the nature of those incidents. Against this history of the case, we proceed to address Appellant's first issue.

[¶18] Appellant claims the district court abused its discretion in allowing the State to amend the felony information because the amended information did not allege facts which, if proven, constituted the crime of felony stalking. Appellant presents the issue as one of statutory interpretation. He contends that the felony stalking statute unambiguously requires a "course of conduct" to be initiated subsequent to the entry of a court order prohibiting harassment of the victim. Based on this interpretation of the statute, Appellant contends that the amended information was defective because the State alleged only one incident of harassment, on March 20, 2010, that violated the protection order entered in December, 2009. Appellant states that he "committed one single act" and that "a single act does not constitute the required pattern of conduct composed of a series of acts" necessary to a felony stalking conviction.

[¶19] The State responds that "The entire course of conduct comprising the crime of stalking need not violate a single protective order to be a felony." It contends that "There is no question that for almost four years, [Appellant] intentionally engaged in a pattern of conduct, or series of acts, that had the purpose and effect of harassing Ms. Leair." The State claims that Appellant's interpretation of the felony stalking statute would "wipe the slate clean with each new protection order" because "a defendant would not face a felony conviction unless he repeatedly violates the same order."

[¶20] We review a district court's decision to allow the State to amend an information for abuse of discretion:

> Wyoming Rule of Criminal Procedure 3(e) grants discretion to a trial judge in deciding whether or not a motion brought by the State to amend the information just prior to trial should be granted. Consequently, we review the trial court's decision by applying our abuse of discretion standard. In deciding whether or not the trial court abused its discretion, this court must "determine whether the trial court could reasonably conclude as it did and whether any facet of its ruling was arbitrary or capricious."

*Mowery v. State*, 2011 WY 38, ¶ 9, 247 P.3d 866, 868 (Wyo. 2011) (quoting *Wilkening v. State*, 2005 WY 127, ¶ 23, 120 P.3d 680, 687 (Wyo. 2005)).

[¶21] Appellant's charge of abuse of discretion is based on the claim that a felony

stalking conviction under Wyo. Stat. Ann. § 6-2-506(e)(iii) or (iv) requires each act of harassment in a series of acts comprising a "course of conduct" to be committed subsequent to the issuance of a court order prohibiting contact with the victim. To this claim, we apply our usual rules of statutory interpretation. Our paramount consideration is the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute. Initially, we determine whether the statute is clear or ambiguous.

> A statute is clear and unambiguous if its wording is such that reasonable persons are able to agree on its meaning with consistency and predictability. Conversely, a statute is ambiguous if it is found to be vague or uncertain and subject to varying interpretations. If we determine that a statute is clear and unambiguous, we give effect to the plain language of the statute.

*Spreeman v. State*, 2012 WY 88, ¶ 10, 278 P.3d 1159, 1162 (Wyo. 2012).

[¶22] We have previously noted that "Legislative history with respect to the specific reasons for the language employed in Wyo. Stat. § 6-2-506 is not available." *Garton v. State*, 910 P.2d 1348, 1355 (Wyo. 1996). However, other courts have recognized that the general intent of stalking statutes is to interrupt the potential for escalated violence against the victim. *See, e.g., Commonwealth v. Urrutia*, 653 A.2d 706, 708 (Pa. Super. Ct. 1995) ("Stalking often is a precursor to increased violence and even homicide. Law enforcement officials view stalking as an early warning of future violence against the victim. In an effort to protect victims, the legislature sought to provide early intervention and possible deterrence."); *State v. Lindell*, 828 N.W.2d 1, 9 (Iowa 2013) ("Undoubtedly, it was the intent of the legislature to prevent [the] type of long-term stalking that serves to frighten the victim and threatens to escalate as the stalker's obsession grows."). Wyoming's stalking statute pursues the goal of deterrence, in part, by providing increased penalties for persons who commit the offense of stalking while subject to an order of protection. Wyo. Stat. Ann. § 6-2-506, which sets forth the crimes of misdemeanor and felony stalking, provides in relevant part as follows:

> **§ 6-2-506. Stalking; penalty.**
>
> . . .
>
> (b) Unless otherwise provided by law, *a person commits the crime of stalking if, with intent to harass another person, the person engages in a course of conduct reasonably likely to harass that person*, including but not limited to any combination of the following:

(i) Communicating, anonymously or otherwise, or causing a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses;

(ii) Following a person, other than within the residence of the defendant;

(iii) Placing a person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant; or

(iv) Otherwise engaging in a course of conduct that harasses another person.

. . .

(e) *A person convicted of stalking under subsection (b) of this section is guilty of felony stalking punishable by imprisonment for not more than ten (10) years, if:*

(i) The act or acts leading to the conviction occurred within five (5) years of a prior conviction under this subsection, or under subsection (b) of this section, or under a substantially similar law of another jurisdiction;

(ii) The defendant caused serious bodily harm to the victim or another person in conjunction with committing the offense of stalking;

(iii) *The defendant committed the offense of stalking in violation of any condition of probation, parole or bail*; or

(iv) *The defendant committed the offense of stalking in violation of a temporary or permanent order of protection* issued pursuant to W.S. 7-3-508 or 7-3-509, or pursuant to a substantially similar law of another jurisdiction.

9

(Emphasis added.) As defined by the statute, a "course of conduct" means "a pattern of conduct composed of a series of acts over any period of time evidencing a continuity of purpose." Wyo. Stat. Ann. § 6-2-506(a)(i).

[¶23] We agree with Appellant that the statute is clear and unambiguous. However, contrary to Appellant's suggestion, we find no indication in the plain language of the statute that the offense of felony stalking under Section 506(e)(iii) or (iv) requires that all acts comprising a "course of conduct" must occur subsequent to the entry of an order prohibiting contact with the victim. The statute provides no chronological limitation with respect to the necessary course of conduct. Rather, the statute provides that a course of conduct is "a series of acts over *any period of time evidencing a continuity of purpose*." Wyo. Stat. Ann. § 6-2-506(a)(i) (emphasis added). In *Garton*, 910 P.2d 1348, addressing a challenge to Section 506(e)(iii) on the grounds that it was unconstitutionally vague, this Court stated that use of the word "any" evidenced the legislature's intent to give the statute a "broad and comprehensive grasp."

> The language of Wyo. Stat. § 6-2-506(e)(iii) . . . is clear and unambiguous in its provision that the offense is a felony when "[t]he defendant committed the offense of stalking in violation of any condition of probation, parole or bail." In addressing the meaning of the word "any" in *McKay v. Equitable Life Assurance Soc'y of the United States*, 421 P.2d 166, 169 (Wyo. 1966), we said, "[t]he common and ordinary understanding of the word is that it means all or every." We also said, "[n]ecessarily it gives to the language employed a broad and comprehensive grasp." *McKay*, 421 P.2d at 169. The clear language of the statute conveys the legislative intent to give Wyo. Stat. § 6-2-506(e)(iii) a broad and comprehensive grasp.

*Id.* at 1353. Similarly, the definition of a "course of conduct," which focuses on a "continuity of purpose" demonstrated by a series of acts occurring over "*any* period of time," evidences the legislature's intent to give broad reach to the statute. If the legislature had intended to limit the offense of felony stalking as suggested by Appellant, it could easily have done so. However, the language employed by the legislature contains no time restrictions with respect to the course of conduct requirement. Accordingly, we find no basis to conclude that all of the acts comprising the "course of conduct" must be commenced after the issuance of a court order prohibiting harassment of the victim.

[¶24] The "course of conduct" necessary for a felony stalking conviction under Wyo. Stat. Ann. § 6-2-506(e)(iii) or (iv) may encompass acts of harassment occurring prior to

10

the issuance of an order proscribing contact with the victim. Under our interpretation of the statute, the State was not required to demonstrate violations of multiple protection orders in order to establish the course of conduct. However, Appellant's separate violations of the protection orders issued in this case, as well as his violation of the conditions of his probation, nonetheless constituted acts of harassment relevant in establishing a course of conduct occurring in violation of the December, 2009 protection order. The district court did not abuse its discretion in allowing the State to amend the felony information to include incidents of harassment occurring prior to entry of that order.

**Notice of Charges**

[¶25] In his second issue, Appellant asserts that the information did not adequately advise him of the charges against him because "As explained in the previous issue, the charging document does not contain the correct elements of the crime." Appellant complains that he "was made to defend against any and all contact with his current, and then later ex-wife, whether said contact was in violation of a protection order or not, which had occurred between 2006 and 2010." He asserts that there was insufficient information to advise him of the charge against him because "most of the contact the State identified [] to show the 'course of conduct' did not occur during the existence of a protection or restraining order."

[¶26] We employ a *de novo* standard of review to the issue of whether a defendant has received adequate notice of the charges against him.

> An accused has a constitutional right to notice of the charges against him to allow him a fair opportunity to defend against the charges. United States Constitution, Sixth Amendment; Wyo. Const. art. 1 § 10. *See also*, W.R.Cr.P. 3; *Derksen v. State*, 845 P.2d 1383, 1388-89 (Wyo. 1993). Because the right to notice of criminal charges is of constitutional magnitude and the determination on the adequacy of the notice is a question of law, we review the issue *de novo*. *See, e.g.*, *Pena v. State*, 2004 WY 115, ¶ 7, 98 P.3d 857, 862 (Wyo. 2004).

*Counts v. State*, 2012 WY 70, ¶ 39, 277 P.3d 94, 106 (Wyo. 2012) (quoting *Heywood v. State*, 2009 WY 70, ¶ 4, 208 P.3d 71, 72 (Wyo. 2009)).

[¶27] We have stated that an information is constitutionally sufficient "if it 1) contains the elements of the offense charged; 2) fairly informs a defendant of the charge against which he must defend; and 3) enables a defendant to plead an acquittal or conviction in

bar of future prosecutions for the same offense." *Hulsy v. State*, 2009 WY 81, ¶ 9, 209 P.3d 901, 904 (Wyo. 2009) (quoting *Estrada-Sanchez v. State*, 2003 WY 45, ¶ 13, 66 P.3d 703, 708 (Wyo. 2003)). A detailed affidavit attached to the information may provide some of these facts. *Spagner v. State*, 2009 WY 12, ¶ 10, 200 P.3d 793, 799 (Wyo. 2009).

[¶28] We find no merit in Appellant's claim that he was not sufficiently advised of the charges against him. The amended affidavit of probable cause contained a detailed account of the incidents of harassment, the dates on which those incidents occurred, and the various protection orders and conditions of probation in effect at the time of those incidents. This information was again provided to Appellant in the State's response to Appellant's motion for a bill of particulars. At the hearing on Appellant's motion, Appellant's counsel acknowledged that the State's response "essentially takes care of what would be included in a Bill of Particulars." Further, to the extent that Appellant relies on the assertion that the information did not contain the correct elements of the crime of felony stalking, we have already rejected that argument in our discussion of Appellant's first issue. Finally, we find no merit in Appellant's claim that the information was inadequate because it alleged incidents of harassment that occurred outside the existence of a protection order or condition of probation. All of the incidents alleged in the affidavit of probable cause, and re-asserted in the State's response to Appellant's motion for a bill of particulars, were used to establish the "course of conduct" necessary for a stalking conviction. Appellant suffered no prejudice as a result of the fact that he was required to defend against all of the alleged incidents of harassment, regardless of whether the individual incidents violated a protection order or condition of probation. We conclude that Appellant was adequately advised of the charges against him.

**Jury Instructions**

[¶29] In his final issue, Appellant contends that the jury instructions contained a confusing, misleading, and inaccurate statement of the law. More specifically, he claims that Jury Instruction No. 10 improperly joined the "intent to harass" and "course of conduct" elements of the offense. Because Appellant did not object at trial, we review for plain error. *Walker*, ¶ 6, 267 P.3d at 1110. Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him. *Id.* An error in the jury instructions results in prejudice when "the instruction 'confused or misled the jury with respect to the proper principles of law.'" *Id.* (quoting *Black v. State*, 2002 WY 72, ¶ 6, 46 P.3d 298, 300 (Wyo. 2002)).

[¶30] The State concedes that the first prong of the plain error analysis is satisfied as a result of the fact that Jury Instruction No. 10 is part of the record. However, the State

12

claims that the instructions did not violate a clear and unequivocal rule of law. The State contends that Jury Instruction No. 10, when read in conjunction with Jury Instruction No. 5, which set forth the elements of the crime, as well as Instructions No. 7, 8, and 9, which defined the terms "intent," "harass," and "course of conduct," respectively, adequately informed the jury that it was required to find an "intent to harass" separately from a course of conduct. Further, the State claims that "Even if Instruction #10 was poorly worded," Appellant cannot establish prejudice because the State discussed the individual elements of the crime during closing arguments, and because the evidence of Appellant's guilt was "overwhelming."

[¶31] As we noted in *Walker I*, the purpose of jury instructions is to "provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law." *Walker I*, ¶ 10, 267 P.3d at 1111 (citing *Miller v. State*, 904 P.2d 344, 348 (Wyo. 1995)). Accordingly, in order to support a reliable verdict, "It is crucial that the trial court 'correctly state the law and adequately cover the relevant issues.'" *Id.* (quoting *Olsen v. State*, 2003 WY 46, ¶ 134, 67 P.3d 536, 585 (Wyo. 2003)). Ultimately, the test of adequate jury instructions is "'whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.'" *Burnett v. State*, 2011 WY 169, ¶ 14, 267 P.3d 1083, 1087 (Wyo. 2011) (quoting *Bloomfield v. State*, 2010 WY 97, ¶ 15, 234 P.3d 366, 373 (Wyo. 2010)). With these principles in mind, we turn to the relevant instructions in this case.

[¶32] In Instruction No. 5, the jury was advised of the necessary elements of the crime:

> **Instruction No. 5**
>
> The necessary elements of the crime, Stalking, as charged in this case, are:
>
> 1. On or between July 9, 2006 through March 20, 2010;
>
> 2. In Campbell County, Wyoming;
>
> 3. The defendant, Daniel Brian Walker;
>
> 4. With the intent to harass Angelia Leair;
>
> 5. Engaged in a course of conduct reasonably likely to harass Angelia Leair;
>
> 6. The Defendant, Daniel Brian Walker, committed the acts set forth in paragraphs 4 and 5 in violation of a

13

temporary or permanent order of protection or conditions of probation or bond.[1]

Instructions No. 7, 8, and 9 then defined the terms "intent," "harass," and "course of conduct," as used in the elements instruction:

**Instruction No. 7**

The intent with which an act was done is a condition of the mind that is seldom, if ever, capable of direct and positive proof. Because we have no power to directly observe the condition of a person's mind, the best we can do is infer it from the evidence introduced.

The jury may consider the circumstances surrounding the act, the doing of the act itself, the manner in which it was done and the means used.

**Instruction No. 8**

"Harass" means to engage in a course of conduct, including but not limited to verbal threats, written threats, lewd or obscene statements or images, vandalism or nonconsensual physical contact, directed at a specific person or the family of a specific person, which the defendant knew or should have known would cause a reasonable person to suffer substantial emotional distress, and which does in fact seriously alarm the person toward whom it is directed.

**Instruction No. 9**

"Course of conduct" means a pattern of conduct consisting of a series of acts over any period of time which demonstrates a continuity of purpose.

Finally, Jury Instruction No. 10 provided that an "intent to harass" was established by a

---

[1] As noted in our discussion of Appellant's first issue, the State was not required to prove that all acts of harassment occurred in violation of a protection order or condition of probation or bond in order to establish the course of conduct element of felony stalking.

showing of a combination of the enumerated examples of harassing conduct:

> A course of conduct reasonably likely to harass another person, **with the intent to harass that person, includes** but is not limited to any combination of the following:
>
>   1. Communicating, anonymously or otherwise, or causing a communication with another person by verbal, electronic, mechanical, telegraphic, telephonic or written means in a manner that harasses;
>
>   2. Following a person, other than within the residence of the Defendant;
>
>   3. Placing a person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the Defendant; or
>
>   4. Otherwise engaging in a course of conduct that harasses that person.

(Emphasis added.) In contrast to Jury Instruction No. 10, the relevant portion of Wyo. Stat. Ann. § 6-2-506(b) provides

> (b) Unless otherwise provided by law, a person commits the crime of stalking **if, with intent to harass another person**, the person engages in a course of conduct reasonably likely to harass that person, including but not limited to any combination of the following:
>
> . . .

(Emphasis added.)

[¶33] We agree with Appellant that Jury Instruction No. 10 improperly incorporated the intent element of stalking into the examples of harassment demonstrating a course of conduct. The jury instruction wrongly states that intent is established when a course of conduct includes the enumerated examples of harassment. In other words, Wyo. Stat. Ann. § 6-2-506(b) requires the jury to find that Appellant engaged in a course of conduct, which may include the enumerated acts, with an intent to harass. In contrast, the instruction allowed the jury to find Appellant acted with intent to harass *because* he did

15

the listed acts. This effectively created the potential for the jury to find Appellant guilty of stalking without independently finding that he intended to harass the victim. Accordingly, we are unable to conclude that the jury instructions "correctly state the law and adequately cover the relevant issues." As in *Walker I*, ¶ 11, 267 P.3d at 1111, "looking at the instructions as a whole, we cannot help but find that the jury must have been confused with regard to the necessary elements of the crime of stalking."

[¶34] Finally, we find that the error in the jury instructions caused prejudice to Appellant. The State acknowledges that "the defense's theory of the case was that Walker did not have the requisite intent to harass, and closing arguments centered around whether the State had met its burden of proving intent." Indeed, with respect to the incident that occurred at Wal-Mart on March 20, 2010, Appellant testified at trial that he was shopping for electronics equipment and had "no idea" that he was near Ms. Leair. He stated "I was looking at the back of her head. I had no idea that was my ex-wife." In light of Appellant's testimony supporting the claim that he did not have the requisite intent to harass Ms. Leair, we do not agree that the evidence of Appellant's guilt was "overwhelming," as suggested by the State. More fundamentally, however, considering the fact that Jury Instruction No. 10 effectively relieved the State of the obligation to prove that Appellant acted with intent, we are unable to conclude that the jury instructions left "no doubt as to the circumstances under which the crime can be found to have been committed." *Burnett*, ¶ 14, 267 P.3d at 1087. Rather, we conclude that the instructions likely "confused or misled the jury with respect to the proper principles of law." *Walker*, ¶ 6, 267 P.3d at 1110. Accordingly, we find that Appellant was materially prejudiced and that Appellant has established plain error.

[¶35] Reversed and remanded for further proceedings consistent with this opinion.

16