# IN THE SUPREME COURT, STATE OF WYOMING

# 2017 WY 43

APRIL TERM, A.D. 2017

April 27, 2017

DANELL BLEVINS,

Appellant
(Defendant),

v.                                                                                          S-16-0191

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
The Honorable Joseph B. Bluemel, Judge

*Representing Appellant:*
>Office of the Public Defender:  Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
>Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne Martens, Senior Assistant Attorney General; Caitlin F. Young, Assistant Attorney General.  Argument by Ms. Young.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]    A jury convicted Appellant Danell Blevins of felony exploitation of a vulnerable adult, in violation of Wyo. Stat. Ann. §§ 6-2-507(a) and (d) (LexisNexis 2015).   On appeal, Ms. Blevins challenges the sufficiency of the evidence to support the jury's conclusion that the victim, Richard Tefertiller, was a vulnerable adult.  She also claims the district court improperly instructed the jury on the mental element of the crime.

[¶2]    We affirm.

## ISSUES

[¶3]    Ms. Blevins presents the following issues on appeal:

> I.      Did the State present sufficient evidence to prove beyond a reasonable doubt that Mr. Tefertiller was a vulnerable adult as defined by statute?
>
> II.     Did the jury instruction that exploitation sufficient to establish the felony conviction need be a "reckless or intentional act" misstate the law?

The State offers a similar statement of the issues.

## FACTS

[¶4]    Ms. Blevins was a licensed practical nurse (LPN) at the United States Department of Veterans Affairs (VA) clinic in Evanston, Wyoming.  Mr. Tefertiller, who was approximately 73 years old during the time at issue, was a disabled veteran.  He frequented the VA clinic for evaluation and treatment of a host of medical and mental issues.  Mr. Tefertiller's medical history included bouts of colon and prostate cancer, the latter resulting from his exposure to Agent Orange during the Vietnam War.  Mr. Tefertiller also had post-traumatic stress disorder (PTSD) as a result of his service in Vietnam.  The PTSD caused him to anger quickly and have recurrent nightmares.  Mr. Tefertiller drank significant amounts of alcohol to self-medicate his PTSD and help him sleep.  Whether as a consequence of his drinking, his age or other issues, Mr. Tefertiller fell and injured himself on occasion and had memory problems.

[¶5]    Ms. Blevins befriended Mr. Tefertiller and, in 2014, asked him to lend her money so that she could continue her education to become a registered nurse (RN). During the period between January 23, 2014 and January 2, 2015, Mr. Tefertiller gave Ms. Blevins

1

$39,550. At least $39,000 was a loan for her education,[1] which she was supposed to repay once she obtained her degree. Ms. Blevins did not enter an RN program and, instead, used most of the money for things other than education.[2] She paid bills, gave some of the money to her sister, and went on a vacation.

[¶6] Mr. Tefertiller's daughters learned about his loans to Ms. Blevins and contacted her to discuss repayment. She refused to talk to them about the loans, claiming the transactions were between her and Mr. Tefertiller. The daughters alerted the VA, which, together with the Evanston police department, began an investigation. The State charged Ms. Blevins with one count of intentionally exploiting a vulnerable adult, a felony. She was tried before a jury in April 2016, and the jury found her guilty of the crime. The district court sentenced Ms. Blevins to serve one to four years in prison and ordered her to reimburse $39,000 to Mr. Tefertiller. She filed a timely notice of appeal to this Court.

## DISCUSSION

### 1. Sufficiency of the Evidence to Establish Mr. Tefertiller was a Vulnerable Adult

[¶7] Ms. Blevins claims her conviction should be reversed because the State did not present sufficient evidence that Mr. Tefertiller was a vulnerable adult. In analyzing her claim,

> [w]e do not consider "whether or not the evidence was sufficient to establish guilt beyond a reasonable doubt, but [instead] whether or not the evidence could reasonably support such a finding by the factfinder." *Hill v. State*, 2016 WY 27, ¶ 13, 371 P.3d 553, 558 (Wyo. 2016) (citing *Levengood v. State*, 2014 WY 138, ¶ 12, 336 P.3d 1201, 1203 (Wyo. 2014)). "We will not reweigh the evidence nor will we re-examine the credibility of the witnesses." *Hill*, 2016 WY 27, ¶ 12, 371 P.3d at 558 (citation omitted). We review the sufficiency of the evidence "from this perspective because we defer to the jury as the fact-finder and assume they believed only the evidence adverse to the defendant since they found

---

[1] At sentencing, the district court ordered Ms. Blevins to pay Mr. Tefertiller $39,000 in restitution. It concluded that she should not be required to pay back the other $550 because there was evidence that he gave her $500 in December of 2014 as a Christmas gift and $50 at another time to reimburse her for purchasing new slippers for him.

[2] Ms. Blevins took two pre-requisite classes, and after she was suspended from her job at the VA for the conduct at issue here, she took a test for admission to the RN program at Laramie County Community College in Cheyenne, Wyoming.

the defendant guilty beyond a reasonable doubt." *Oldman* [*v. State*], 2015 WY 121, ¶ 5, 359 P.3d [964] at 966.

*Mraz v. State,* 2016 WY 85, ¶ 19, 378 P.3d 280, 286 (Wyo. 2016), quoting *Bean v. State*, 2016 WY 48, ¶ 45, 373 P.3d 372, 387 (Wyo. 2016).  In addition,

> this Court examines the evidence in the light most favorable to the State. *Faubion v. State*, 2010 WY 79, ¶ 12, 233 P.3d 926, 929 (Wyo. 2010). We accept all evidence favorable to the State as true and give the State's evidence every favorable inference which can reasonably and fairly be drawn from it. We also disregard any evidence favorable to the appellant that conflicts with the State's evidence. *Id*.

> *Harnden v. State*, 2016 WY 92, ¶ 5, 378 P.3d 611, 612–13 (Wyo. 2016) (quoting *Pena v. State*, 2015 WY 149, ¶ 16, 361 P.3d 862, 866 (Wyo. 2015)).

*Worley v. State,* 2017 WY 3, ¶ 17, 386 P.3d 765, 771 (Wyo. 2017).

[¶8]   Ms. Blevins was convicted of felony exploitation of a vulnerable adult under §§ 6-2-507 (a) and (d):

> (a) Except under circumstances constituting a violation of W.S. 6-2-502 [aggravated assault and battery], a person is guilty of abuse, neglect, abandonment or exploitation of a vulnerable adult if the person intentionally or recklessly abuses, neglects, abandons, intimidates or exploits a vulnerable adult.
> . . . .

> (d) Exploitation of a vulnerable adult is a felony punishable by not more than ten (10) years in prison, a fine of not more than ten thousand dollars ($10,000.00), or both, and registration of the offender's name on the central registry.

[¶9]   Section 6-2-507(e) directs the reader to Wyo. Stat. Ann. § 35-20-102(a) (LexisNexis 2015) for the definitions of various terms used in the statute.  "Exploitation" and "vulnerable adult" are defined in relevant part as:

> (ix) "Exploitation" means the reckless or intentional act taken by any person, or any use of the power of attorney, conservatorship or guardianship of a vulnerable adult, to:

(A) Obtain control through deception, harassment, intimidation or undue influence over the vulnerable adult's money, assets or property with the intention of permanently or temporarily depriving the vulnerable adult of the ownership, use, benefit or possession of his money, assets or property[.]

. . . .

(xviii) "Vulnerable adult" means any person eighteen (18) years of age or older who is unable to manage and take care of himself or his money, assets or property without assistance as a result of advanced age or physical or mental disability[.]

Sections 35-20-102(a)(ix) and (xviii).

[¶10] The terms "advanced age" and "mental disability" are also defined by statute. "Advanced age" means "a person who is sixty (60) years of age or older." Section 35-20-102(a)(xxi). "Mental disability" is defined in relevant part as:

a condition causing mental dysfunction resulting in an inability to manage resources, carry out the activities of daily living or protect oneself from neglect, abuse, exploitation or hazardous situations without assistance from others.

Section 35-20-102(a)(xvi).[3] In arguing that the evidence was insufficient to establish that Mr. Tefertiller was a vulnerable adult, Ms. Blevins does not focus on whether or not Mr. Tefertiller was of advanced age or physically or mentally disabled, but, rather, upon whether those attributes made him unable to manage and care for himself or his money, assets, or property without assistance. Considering the evidence in the light most favorable to the State, the record contains sufficient evidence for the jury to find that Mr. Tefertiller met the legal definition of vulnerable adult.

[¶11] Mr. Tefertiller's daughters, Candace Tefertiller and Holly Barnes, testified about his physical ailments during 2014, including on-going issues with mobility and injuries from falls. Ms. Tefertiller was a physical therapist and described the evolution of his mobility problems. She said that, in 2014, she told him she was concerned that he would fall on the stairs at his house. Mr. Tefertiller's medical records confirm that he was

---

[3] Physical disability is not defined in the relevant statutes, and the district court did not instruct the jury on the statutory definitions of "advanced age" or "mental disability." However, Ms. Blevins does not challenge those aspects of the instructions on appeal.

4

injured from falling in 2014. Because of Mr. Tefertiller's physical problems, he had a housekeeper who cleaned and did laundry, and Ms. Barnes and her children took care of the yard. In fact, Ms. Barnes said that in 2014, other than a little grocery shopping that Mr. Tefertiller did himself, "we took care of everything."

[¶12] Ms. Barnes testified that, during the relevant time, Mr. Tefertiller also had mental problems which affected his ability to care for himself and his assets. She stated he suffered from PTSD, was regularly intoxicated, and had memory problems. Ms. Barnes assisted Mr. Tefertiller by taking him to some of his appointments and helping him remember his schedule. Although she did not identify a specific time period, Ms. Tefertiller testified that her father had significant drinking and cognitive problems prior to 2015.

[¶13] Mr. Tefertiller's medical records corroborated his daughters' testimony about his memory loss, alcoholism and other mental problems. In June 2014, a health care provider noted that Mr. Tefertiller exhibited memory problems, even raising the possibility that he was suffering from Alzheimer's disease. The provider stated in his notes that Mr. Tefertiller had not been filling his prescriptions and he had tried to convince Mr. Tefertiller to allow someone to help him manage his medication. Although Mr. Tefertiller had his own checkbook which he used to write the checks to Ms. Blevins, Ms. Barnes assisted with managing his assets by checking his mail, gathering his bills and paying them on-line.

[¶14] In an effort to show the evidence was insufficient to establish that Mr. Tefertiller was a vulnerable adult when she obtained money from him, Ms. Blevins points out that he lived alone and drove himself to some appointments at the VA and to get groceries. She also claims his trial testimony showed he was not a vulnerable adult. Mr. Tefertiller was mostly articulate and certainly very witty at trial. He joked and bantered with the judge and counsel throughout his testimony.

[¶15] However, to accept Ms. Blevins' argument, we would have to view the evidence in her favor, which is directly contrary to our standard of review. As outlined above, the evidence showed that, although he had some degree of independence, Mr. Tefertiller struggled with a number of issues and needed regular help both with physical tasks and cognitive matters. In addition, Mr. Tefertiller's mental acuity at trial in April 2016 does not demonstrate that he was able to manage himself and his affairs without assistance in 2014. At the time of trial, Mr. Tefertiller had been living in a skilled nursing facility, rather than alone like he was in 2014. It is reasonable to assume that, while living in the facility, he was not as likely to be regularly intoxicated or subject to falls. Furthermore, his trial testimony demonstrated that he still needed assistance with managing his financial affairs. When questioned about which bank he used, he could not immediately remember the name and asked his daughter for assistance. He also stated that Ms. Barnes continued to be in charge of paying his bills and he could not remember the exact

amounts of his Social Security and VA disability benefits.  He also could not recall some of the checks he had given Ms. Blevins.

[¶16]  Ms. Blevins was interviewed by law enforcement before she was charged.  A video recording of one of the interviews was shown at trial.  Ms. Blevins acknowledged that she knew about Mr. Tefertiller's problems with alcohol, PTSD and memory from personal observation and that she also had access to his VA medical records which included the full list of his ailments.  Ms. Blevins stated that during the time Mr. Tefertiller was giving her money, his health was declining.  In fact, she admitted that she knew "he was vulnerable and that he was having mental issues" and "borrowed money from him" anyway.[4]

[¶17]  Ms. Blevins insists a Nebraska court of appeals case, *State v. Stubbs,* 555 N.W.2d 55 (Neb. Ct. App. 1996), supports her argument that the evidence was insufficient to establish that Mr. Tefertiller was a vulnerable adult.  Stubbs befriended an elderly gentleman and allegedly took items from his house and bought a tractor from him at a price well below market value.  *Id.* at 59.  The elderly man had mild senility and difficulty ambulating because of balance problems.  He also kept a "messy" house on one occasion, subsisted primarily on milk and other liquids for a time, and led a sedentary life. *Id.* at 61.

[¶18]  Stubbs was convicted under a Nebraska statute which stated that a "person commits knowing and intentional abuse of a vulnerable adult if he or she through a knowing and intentional act causes or permits a vulnerable adult to be ... [e]xploited." *Id.* at 61, quoting Neb. Rev. Stat. § 28–386 (Reissue 1995).  "Vulnerable adult" was defined in Nebraska as: "any person eighteen years of age or older who has a substantial mental or functional impairment or for whom a guardian has been appointed under the Nebraska Probate Code." *Id.,* quoting Neb. Rev. Stat. § 28-371 (Reissue 1995).

[¶19]  At the end of Stubb's trial, the trial court ruled that the evidence was insufficient to sustain a verdict on the "substantial mental impairment" portion of the statute. *Id.* at 61.  Thus, the question was whether the elderly gentleman was vulnerable because he had "substantial functional impairment," which was defined as:  "a substantial incapability, because of physical limitations, of living independently or providing self-care as determined through observation, diagnosis, investigation, or evaluation." *Id.,* quoting Neb. Rev. Stat. § 28–368 (Reissue 1995).  "Living independently" was defined by statute as including, "but not be limited to, using the telephone, shopping, preparing food, housekeeping, and administering medications."  "Self-care" included, but was not limited

---

[4] There is no indication that Ms. Blevins was aware of the statutory definition of "vulnerable adult" when she stated that she believed Mr. Tefertiller was vulnerable.  It is, therefore, reasonable to assume that she was using the common definition of the term, i.e., "susceptible to physical or emotional attack or harm" or "in need of special care, support, or protection because of age, disability, or risk of abuse or neglect." Oxford Dictionaries, http://en.ocforddictionaries.com (last visited April 24, 2017).

to, "personal hygiene, eating, and dressing." *Id.,* quoting Neb. Rev. Stat. § 28–366 (Reissue 1995). The jury found Stubbs guilty but the court of appeals reversed, concluding that the evidence was insufficient to establish the elderly man was a vulnerable adult as a result of substantial functional impairment. *Id.* at 62.

[¶20] There are many obvious differences between *Stubbs* and the case at bar. First, the Nebraska statutes differ materially from our statutes. Unlike Wyoming, Nebraska does not include "advanced age" as one of the attributes which makes an adult vulnerable. Nebraska also requires "substantial" impairment, while our statute requires that the person be "unable to manage and take care of himself" or his assets "without assistance." Furthermore, the evidence outlined above establishes that, at the time Ms. Blevins was obtaining money from him, Mr. Tefertiller suffered from more serious conditions than the elderly gentleman in *Stubbs* did.

[¶21] Ms. Blevins also implies that we should adopt the following rule from the *Stubbs* opinion: "[A]lthough [the Nebraska statute] does not provide that there must be a nexus between a vulnerable adult's impairment and the exploitation, it seems evident that this was the intent of the statute, and we now hold that this is a requirement of the statute." *Stubbs,* 555 N.W.2d at 62. The court then concluded that it was "hard to imagine" how the elderly gentleman's physical limitations facilitated Stubb's exploitation of him. *Id.* at 63.

[¶22] We do not need to decide whether the Nebraska nexus rule applies in Wyoming. The plain language of § 6-2-507 does not require a nexus between the victim's particular impairment and the exploitation. Ms. Blevins does not explain how our statutory language could be viewed to imply such a requirement and her citation to *Stubbs,* which addressed entirely different statutory language, as her only authority for adoption of the rule is insufficient to justify our consideration of this argument. *See Willey v. Willey,* 2016 WY 116, ¶ 30, 385 P.3d 290, 299-300 (Wyo. 2016) (refusing to consider an argument not supported by cogent argument or citation to pertinent authority). In addition, Ms. Blevins does not describe how the nexus concept would apply to her case. As we stated above, it is unquestionable that Mr. Tefertiller was of advanced age and there was also clear evidence that he was physically and mentally disabled. Accepting the State's evidence as true, Ms. Blevins was able to obtain money from Mr. Tefertiller because of his advanced age and physical and mental disabilities. Thus, even if we concluded that the legislature intended to include the nexus requirement in § 6-2-507 (which we do not), it would not mandate a different result in this case.

[¶23] Reviewing the evidence in the light most favorable to the State, as required by our standard of review, the record supports the jury's finding that Mr. Tefertiller was a vulnerable adult in 2014 when Ms. Blevins obtained money from him. The State presented ample evidence that he was unable, as a result of advanced age, mental

disability and/or physical disability, to take care of his affairs and sometimes, himself, without assistance.

### 2. Jury Instructions on the Mental Element Required for Conviction of Felony Exploitation of a Vulnerable Adult

[¶24] The district court instructed the jury on the elements of the crime of exploitation of a vulnerable adult, as follows:

### JURY INSTRUCTION NO. 17

The elements of the crime of Exploitation of a Vulnerable Adult, as charged in Count I of the Information in this case are:

1. Between the dates of January 23, 2014 and January 2, 2015;
2. In Uinta County, Wyoming;
3. The Defendant, Danell Blevins;
4. Intentionally;
5. Exploited;
6. A vulnerable adult, Richard Tefertiller.

It also instructed the jury on the statutory definition of "exploitation":

### INSTRUCTION NO. 18

"Exploitation" means the reckless or intentional act taken by any person, of a vulnerable adult, to obtain through deception or undue influence over the vulnerable adult's money with the intention of permanently or temporarily depriving the vulnerable adult.

[¶25] Ms. Blevins claims the district court's inclusion of both the reckless and intentional *mens rea* in the definition of exploitation potentially confused the jury as to what mental element had to be proven in order to convict her. She did not object to this aspect of the jury instructions at trial; therefore, we review for plain error. *Cecil v. State,* 2015 WY 158, ¶ 10, 364 P.3d 1086, 1089 (Wyo. 2015). We find plain error only when: "(1) the record clearly reflects the alleged error; (2) the party claiming the error demonstrates a violation of a clear and unequivocal rule of law; and (3) the party proves that the violation adversely affected a substantial right resulting in material prejudice." *Griggs v. State,* 2016 WY 16, ¶ 81, 367 P.3d 1108, 1132-33 (Wyo. 2016), quoting *Cazier v. State,* 2006 WY 153, ¶ 10, 148 P.3d 23, 28 (Wyo. 2006) (some citations omitted).

[¶26] The record contains the relevant instructions. Consequently, the first element of the plain error test is satisfied. The second element requires demonstration of violation of

a clear and unequivocal rule of law. In determining whether the district court committed a clear error, we test the instructions using the following principles:

> The purpose of jury instructions is to "provide the jury with a foundational legal understanding to enable a reasoned application of the facts to the law." *Walker* [*v. State,* 2013 WY 58,] ¶ 31, 302 P.3d [182,] 191 [Wyo. 2013 (*Walker II*).] In order to support a reliable verdict, it is crucial that the trial court correctly state the law and adequately cover the relevant issues. Ultimately, the test of adequate jury instructions is "whether they leave no doubt as to the circumstances under which the crime can be found to have been committed." *Walker II,* ¶ 31, 302 P.3d at 191.

*Dean v. State,* 2014 WY 158, ¶ 33, 339 P.3d 509, 517 (Wyo. 2014) (some citations omitted).

[¶27] Ms. Blevins' challenge to the jury instructions requires that we review the relevant statutes. Statutory interpretation is a question of law. *TW v. State (In the Interest of JB,* 2017 WY 26, ¶ 10, 390 P.3d 357, 360 (Wyo. 2017). To interpret a statute, we seek the legislature's intent "'as reflected in the plain and ordinary meaning of the words used in the statute.'" *Id.,* ¶ 12, 390 P.3d at 360, quoting *Butler v. State,* 2015 WY 119, ¶ 7, 358 P.3d 1259, 1262 (Wyo. 2015) (citation omitted). We provided the following guidance for interpreting statutes in *TW,* ¶ 12, 390 P.3d at 360:

> "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale* [*v. State*], [2015 WY 30,] ¶ 12, 344 P.3d [761,] 765 [(Wyo. 2015)] (quoting *Rodriguez v. Casey,* 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)). In light of this objective, we have said:
>
>> We therefore construe each statutory provision *in pari materia,* giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. . . . When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

*Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) citing *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 36-37, 319 P.3d 116, 125-26 (Wyo. 2014).

*Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie Co. Sch. Dist. No. One,* 2016 WY 113, ¶ 10, 384 P.3d 679, 683-84 (Wyo. 2016).

[¶28]  As we stated above, the State charged Ms. Blevins with intentional exploitation of Mr. Tefertiller under §§ 6-2-507 (a) and (d), which we will repeat here for convenience:

> (a) Except under circumstances constituting a violation of W.S. 6-2-502, a person is guilty of abuse, neglect, abandonment or exploitation of a vulnerable adult if the person intentionally or recklessly abuses, neglects, abandons, intimidates or exploits a vulnerable adult.
> . . . .
>
> (d) Exploitation of a vulnerable adult is a felony punishable by not more than ten (10) years in prison, a fine of not more than ten thousand dollars ($10,000.00), or both, and registration of the offender's name on the central registry.

Subsection (a) generally states that the crime of exploitation of a vulnerable adult occurs if the person acts intentionally or recklessly.  That is consistent with the definition of exploitation in § 35-20-102(a)(ix) (see Paragraph 9, above) and Jury Instruction No. 18. The crime of felony exploitation of a vulnerable adult as set out in § 6-2-507(d) does not include a mental element.  The State's decision to charge the more culpable mental state—intentionally—makes sense when other provisions of § 6-2-507 are considered. Section 6-2-507(b) makes reckless exploitation of a vulnerable adult a misdemeanor; while, subsection (c) of the statute makes intentional abuse, neglect or abandonment of a vulnerable adult a felony.  The only way to reasonably reconcile all of the provisions of § 6-2-507 is to apply the "intentional" language to felony exploitation of a vulnerable adult in subsection (d).  *TW,* ¶ 12, 390 P.3d at 360 (noting that we seek to harmonize all statutes relating to the same subject).  That is how the State charged Ms. Blevins and how the district court instructed the jury on the elements of the crime in Instruction No. 17.

[¶29]  We agree with Ms. Blevins that the district court's definition of exploitation in Instruction No. 18 was confusing because it included the mental elements for both the felony and misdemeanor crimes.  Instruction No. 18, when considered in isolation from the other instructions, may have left the jury with doubt as to the circumstances under which Ms. Blevins could be found guilty.  *See, e.g.*, *Walker II,* ¶ 33, 302 P.3d at 192

10

(concluding that a jury instruction improperly allowed the jury to find the defendant "guilty of stalking without independently finding that he intended to harass the victim"). The trial court could easily have avoided this problem by omitting "reckless" from Instruction No. 18.

[¶30]  However, Ms. Blevins was not prejudiced by the error.  We stated in *Christian v. State,* 883 P.2d 376, 379 (Wyo. 1994):

> "When we examine jury instructions, we must look at them in their entirety and read them together." Before a conviction will be reversed due to an erroneous instruction, the defendant must demonstrate that prejudice has occurred. An error in one instruction may be cured elsewhere in the jury instructions by conveying correct information to the jury "'in a clear and concise manner so that it is unlikely that an erroneous impression would remain in the minds of the jurors.'"

(citations omitted).  *See also Duke v. State,* 2004 WY 120, ¶ 95, 99 P.3d 928, 955 (Wyo. 2004).

[¶31]  The jury was clearly and properly instructed in Instruction No. 17 that it had to find that Ms. Blevins acted intentionally in order to find her guilty.  When the correct elements of the crime are read together with the definition of exploitation, a jury would have understood that the "intentional" rather than the "reckless" language from the definition of exploitation applied to Ms. Blevins' case.

[¶32]  Furthermore, the evidence at trial established that Ms. Blevins acted intentionally.  She knew Mr. Tefertiller was aging and suffering from various mental and physical problems.  She admitted that she saw his condition deteriorating during the relevant time frame and even said that she considered him to be vulnerable.  Nevertheless, Ms. Blevins repeatedly asked Mr. Tefertiller for money under the ruse that she was using it to obtain her RN degree and would pay him back after she did so.  In truth, she used very little of the money for school.  Ms. Blevins used the money to pay her bills, gave some to her sister, and even went on a vacation.  The elements instruction contained the correct *mens rea* and the evidence clearly established that Ms. Blevins acted intentionally.  Consequently, the district court's failure to edit the definition of exploitation to include only the intentional mental element did not prejudice her.

## CONCLUSION

[¶33]  The evidence presented at trial was sufficient to support the jury's verdict that Ms. Blevins was guilty of intentional exploitation of a vulnerable adult.  It established that

11

Mr. Tefertiller was a vulnerable adult because he was unable to manage and take care of his assets and, to some extent, himself without assistance as a result of his advanced age, physical impairments and/or mental impairments.

[¶34] Because Ms. Blevins was charged with felony exploitation of a vulnerable adult, the district court should have crafted the instruction defining "exploitation" to include only the "intentional" language. However, the elements instruction stated the proper mental element and the evidence was sufficient to establish that Ms. Blevins acted intentionally.

[¶35] Affirmed.