# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 113

**OCTOBER TERM, A.D. 2016**

**November 30, 2016**

CHEYENNE NEWSPAPERS, INC., d/b/a
Wyoming Tribune Eagle,

Appellant
(Plaintiff),

v.

THE BOARD OF TRUSTEES OF
LARAMIE COUNTY SCHOOL
DISTRICT NUMBER ONE, State of
Wyoming,

Appellee
(Defendant).

S-16-0059

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
    Bruce T. Moats, Law Office of Bruce T. Moats, P.C., Cheyenne, WY.

*Representing Appellee:*
    David Evans and O'Kelly H. Pearson of Hickey & Evans, LLP, Cheyenne, Wyoming.  Argument by Mr. Evans.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**HILL, Justice, delivered the opinion of the Court; DAVIS, Justice, filed a dissenting opinion with which FOX, Justice, joined.**

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    This dispute stems from a public records request that Cheyenne Newspapers, Inc. (the Tribune-Eagle) submitted to Laramie County School District No. One (the School District).    The Tribune-Eagle asked to inspect certain school board member email communications, and in response, the School District retrieved the emails, downloaded them to a compact disc, and made the compact disc available to the Tribune-Eagle, subject to a fee for the time School District staff spent retrieving the records.    The Tribune-Eagle thereafter filed a declaratory judgment action against the School District requesting a ruling that the Wyoming Public Records Act does not allow a government entity to charge for access to electronic records when the request is for inspection of the records and not for a copy of the records.    The District Court ruled in favor of the School District, and the Tribune-Eagle appealed.    We affirm.

## ISSUES

[¶2]    The Tribune-Eagle submits six issues on appeal, which, based on the facts of this case, we narrow to the following two questions:

1.    May a government entity charge for producing a copy of an electronic record when the public record applicant frames its request as a request only to inspect the record?
2.    May a government entity charge for labor costs incurred in responding to a request for access to an electronic record?

## FACTS

[¶3]    On February 11, 2014, the Tribune-Eagle, through one of its reporters, submitted a public records request to the School District, asking to inspect "[a]ll email on school board topics to, among or from school board members since Dec. 1, 2013."    Because school board members use their personal email addresses to conduct school board business, the request required a search and retrieval of emails from personal email accounts of the board members as well as from the School District's computer system. On March 11, 2014, district superintendant, Dr. Mark J. Stock, responded by letter to the Tribune-Eagle's request and advised that a compact disc of the requested emails was available for pick up at the superintendant's office.    Citing the School District's policy governing fees that may be charged for responding to a public records request, Dr. Stock informed the Tribune-Eagle that it would be charged $110 for the compact disc, consisting of "[o]ne hour by clerical staff ($20)" and "three hours by professional personnel (3 x $30)."

[¶4]    The Tribune-Eagle asked the School District to reconsider the fee, and when the School District refused, the Tribune-Eagle filed a declaratory judgment action against it.

1

The Tribune-Eagle sought a ruling that the Public Records Act does not allow the School District to charge for a request to inspect an electronic record, and it also sought injunctive relief barring the School District from charging for staff time for any future inspection or copying of records.

[¶5]   Following discovery, the parties filed cross motions for summary judgment by which they agreed that there were no disputed issues of material fact and that the question on which a ruling was requested was a question of law.  In the School District's Rule 56.1 statement of undisputed facts, it described the steps required to retrieve the requested emails and the costs it included in its fee as follows (record cites omitted):

> 4.    After receiving the Newspaper's request, the District's Instructional Technology (IT) department was instructed to search for emails responsive to the request.
>
> 5.    Actions taken by the IT network engineer to search and produce responsive records included creating a series of computer commands to locate e-mailboxes, filter the results to only include e-mail to and from board members by inputting each of their personal e-mail addresses, verifying the accuracy of the commands, correcting the commands, and outputting the results into another mailbox for export.
>
> 6.    The breadth of the Newspaper's request required the District's network engineer to look at every item on the District's computer server including e-mail, calendar, contact, task, and note items.
>
> 7.    The final step in this process was putting the results into a single file and exporting or burning the Electronic Records to a CD.
>
> 8.    The entire process took several attempts by the District's network engineer and several hours of his time and computer time to run and yield results.
>
> 9.    Unless a board member's email is sent and delivered to someone with a district email address, the email is not captured on the District's computer system.
>
> 10.   The District's network engineer provided direct assistance to individual board members such as reviewing the board member's computer, personal email account, showing the board member how to go through her messages.
>
> 11.   The District did not charge the Newspaper for these efforts.
>
> 12.   The superintendant's executive assistant copied emails between board members and with the superintendant,

received e-mails from board members from their personal computers and forwarded them to IT.

13. The executive assistant tracked the amount of time she spent but did not include any of the time she spent communicating with board members about getting e-mails off of their personal computers.

[¶6] The district court ruled, as a matter of law, that the School District was entitled to the fees it charged the Tribune-Eagle for access to the requested emails. The court reasoned:

7. Resolution of the matter requires the Court to interpret the statutes that apply to this case. W.S. 16-4-202 and 16-4-204 recognize that records and documents are routinely maintained in electronic formats. * * * [W.S. 16-4-202] goes on to provide that, "the reasonable costs of producing a copy of the public record shall be borne by the party making the request. The costs may include the cost of producing a copy of the public record and the cost of constructing the record, including the cost of programming and computer services." In producing or constructing the record, the District had to first locate the electronic records and then review the information to produce the records. The reasonable costs associated with producing the record may be passed on or charged to the party requesting the documents.

8. A separate section of the Act generally addresses inspection and fees: "In all cases in which a person has the right to inspect and copy any public records he may request that he be furnished copies, printouts or photographs for a reasonable fee to be set by the official custodian. Where fees for certified copies or other copies, printouts or photographs of the record are specifically prescribed by law, the specific fees shall apply. Nothing in this section shall be construed as authorizing a fee to be charged as a condition of making a public record available for inspection." W.S. 16-4-204(a). The statute allows fees to be authorized by statute, rule, resolution, ordinance, executive order, or other like authority (W.S. 16-4-204(c)). The District's Guideline for Electronic Records clearly sets out the reasonable costs for production of a public record; such costs are authorized by the Act and that was the policy utilized in reaching the costs for the production of the email records.

3

[¶7]   The Tribune-Eagle timely filed a notice of appeal to this Court.

## STANDARD OF REVIEW

[¶8]   We review a summary judgment entered in a declaratory judgment action as follows:

> We review a grant of summary judgment entered in response to a declaratory judgment action through our usual standard for review of summary judgments. *Arnold*, ¶ 13, 201 P.3d at 1132; *Voss* [*v. Goodman*], ¶ 9, 203 P.3d [415] at 419 [(Wyo.2009)]. Our review of a district court's summary judgment ruling is de novo, using the same materials and following the same standards as the district court. *Arnold*, ¶ 13, 201 P.3d at 1132; W.R.C.P. 56(c). No deference is accorded to the district court on issues of law, and we may affirm the summary judgment on any legal grounds appearing in the record. *Voss*, ¶ 9, 203 P.3d at 419. "The summary judgment can be sustained only when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law." *Id*. (quoting Wyo. Cmty. Coll. Comm'n [v. Casper Cmty. College Dist.], ¶ 11, 31 P.3d [1242] at 1247 [(Wyo.2001)]).

*Cont'l Western Ins. Co. v. Black*, 2015 WY 145, ¶ 13, 361 P.3d 841, 845 (Wyo. 2015) (quoting *City of Casper v. Holloway*, 2015 WY 93, ¶¶ 27–28, 354 P.3d 65, 73 (Wyo. 2015)).

## DISCUSSION

[¶9]   This appeal presents no disputed issues of fact, and therefore our sole task is to determine whether the Wyoming Public Records Act allows the School District to charge the fees it assessed in this case.  In particular, we must first determine whether the Act's provision governing access to electronic records allows a government entity to charge a fee for that access under the circumstances of this case.  We must then determine whether the fee charged for access to electronic documents may include labor costs incurred in responding to the request.  Both of these determinations are questions of statutory interpretation.

[¶10]  Our goal of statutory interpretation and the rules that aid us in the task are well established:

In any question of statutory interpretation, our primary objective is to give effect to the legislature's intent. *L & L Enters. v. Arellano (In re Arellano)*, 2015 WY 21, ¶ 13, 344 P.3d 249, 252 (Wyo.2015). "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'" *Adekale*, ¶ 12, 344 P.3d at 765 (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo.2002)). In light of this objective, we have said:

> We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.
>
> *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo.2014) (citing *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 36–37, 319 P.3d 116, 125–26 (Wyo.2014)).

*Robert L. Kroenlein Trust ex rel. Alden v. Kirchhefer*, 2015 WY 127, ¶ 22, 357 P.3d 1118, 1126 (Wyo. 2015).

[¶11]  If a statute is unambiguous, meaning "reasonable persons are able to agree on its meaning with consistency and predictability," we look to the statute's plain language to determine the legislature's intent. *Meyer v. Fanning*, 2016 WY 6, ¶ 17, 367 P.3d 629, 634 (Wyo. 2016).  Even where a statute is unambiguous, however, we may resort to extrinsic aids of interpretation to confirm the meaning the legislature intended for the terms it used. *Kroenlein*, ¶ 27, 357 P.3d at 1127, n. 1 (citing *Parker Land & Cattle Co. v. Wyo. Game and Fish Comm'n*, 845 P.2d 1040, 1045 (Wyo. 1993)).

**A.    Authority to Charge Fee When Request is to Inspect Electronic Records**

[¶12]   The Public Records Act provision governing access to electronic records is section 202(d).  It provides:

> (d) If a public record exists primarily or solely in an electronic format, the custodian of the record shall so inform the requester. Electronic record inspection and copying shall be subject to the following:
>
> > (i) The reasonable costs of producing a copy of the public record shall be borne by the party making the request. The costs may include the cost of producing a copy of the public record and the cost of constructing the record, including the cost of programming and computer services;
> >
> > (ii) An agency shall provide an electronic record in alternative formats unless doing so is impractical or impossible;
> >
> > (iii) An agency shall not be required to compile data, extract data or create a new document to comply with an electronic record request if doing so would impair the agency's ability to discharge its duties;
> >
> > (iv) An agency shall not be required to allow inspection or copying of a record in its electronic format if doing so would jeopardize or compromise the security or integrity of the original record or of any proprietary software in which it is maintained;
> >
> > (v) Nothing in this section shall prohibit the director of the office of homeland security from enacting any rules pursuant to his authority under W.S. 19-13-104(d)(v).

Wyo. Stat. Ann. § 16-4-202(d) (LexisNexis 2015).

[¶13]   The Tribune-Eagle contends that because its public records request was a request to inspect existing electronic records and not a request for copies of those records or for the construction of a new record, the Act did not authorize the School District to charge a fee for access to the emails of school board members.  We disagree.

6

[¶14]   As stated above, our primary objective in interpreting a statute is to give effect to the legislature's intent.   When we read the statutory provisions governing access to electronic records together and as a whole, we find the legislature's intent clear.   Whether the request for electronic records is framed as a request to inspect or as a request for a copy, if the only way for the custodian to provide the record is to produce a copy of it, the cost of producing that copy is to be borne by the party making the request.

[¶15]   We begin with the second sentence in section 202(d), which states, "Electronic record *inspection and copying* shall be subject to the following[.]"   Wyo. Stat. Ann. § 16-4-202(d) (LexisNexis 2015) (emphasis added).   What follows, among other provisions, is subsection (d)(i), which directs that "[t]he reasonable costs of producing a copy of the public record shall be borne by the party making the request."   *Id*.   By section 202(d)'s plain terms, then, the requirement that the public records applicant bear the cost of producing a copy applies to both electronic record inspection <u>and</u> copying.   This makes sense when section 202(d) is considered in light of the challenges presented in making electronic records accessible.

[¶16]   Certain classes of electronic records can be, and are, made readily available for inspection through the creation of online databases.   *See, e.g.*, http://www.sweet.wy.us (Sweetwater County website providing online access to electronic records including land records and public meeting agendas and minutes).   There are, however, other electronic records that cannot be made available for inspection without production of a copy.   As the Wyoming Department of Administration and Information advised in its recently promulgated rules regarding access to state electronic records:

> **"Electronic public record"** is a public record that is primarily or solely stored in an electronic format.   Typically, the custodian will only be able to produce a copy of the original electronic public record due to the native format, security, and integrity of the original data or electronic record.

Wyo. Dep't of Admin. & Info. Rules, Chapter 2, Section 3(c), 006.0011.2.09062016.

[¶17]   The emails requested in this case illustrate the type of records for which the traditional notion of inspection is a misfit and inspection necessarily requires production of a copy.   It is undisputed that retrieval of the emails requested by the Tribune-Eagle required special programming to extract the records from multiple email accounts based on the identities of the sender and recipient, the dates of the emails, and whether the emails pertained to any school board topic.   Indeed, there has been no suggestion that it was in any way feasible for the Tribune-Eagle to access the requested emails online or in any manner that did not require the School District to extract the emails and produce a copy of them.   Given that an electronic records request can be framed in any number of permutations, with search parameters that may or may not coincide with the manner in

which the requested electronic records are stored, it is easily anticipated that the types of programming and extraction that occurred in this case will be required in many instances where inspection of an electronic record is requested.

[¶18] The legislature presumably understood this characteristic of electronic records and also understood that certain electronic records could only be made available for inspection by producing a copy of the electronic record.[1] We find it both reasonable and practical then that the legislature would use the phrase "inspection and copying" as a deliberate choice to apply section 202(d)(i)'s cost provision to both types of requests. *Jones v. State*, 2006 WY 40, ¶ 12, 132 P.3d 162, 165-66 (Wyo. 2006) (quoting *State Bd. of Equalization v. Cheyenne Newspapers, Inc.*, 611 P.2d 805, 809 (Wyo. 1980) ("Statutes should be given a reasonable, practical construction.").

[¶19] To interpret the statutory language otherwise would produce an absurd result. For those electronic records that cannot be provided without producing a copy, the custodian expends the same effort and incurs the same cost regardless of whether the request is for inspection or a copy—and, as in this case, the result is the same, with a copy of the record being given to the public record applicant. We find it unlikely that the legislature, in such identical circumstances, would have intended that whether the costs were borne by the applicant or the custodian would turn solely on whether the applicant framed its request as one for a copy or one for inspection. *See Seherr-Thoss v. Teton County Bd. of County Com'rs*, 2014 WY 82, ¶ 19, 329 P.3d 936, 945 (Wyo. 2014) (In interpreting a statute, "we strive to avoid an interpretation that produces an absurd result.").

[¶20] Our reading of section 202(d) is further confirmed by the legislature's subsequent adoption of Wyo. Stat. Ann. § 16-4-204(e), which specifically references the charges allowed under section 202(d)(i). It provides:

> The department of administration and information shall adopt uniform rules for the use of state agencies establishing procedures, fees, costs and charges ***for inspection, copies and production of public records*** under W.S. 16-4-202(d)(i), 16-4-203(h)(i) and 16-4-204.

Wyo. Stat. Ann. § 16-4-204(e) (LexisNexis 2015) (emphasis added).

---

[1] It is not unusual for this Court to look to facts and circumstances surrounding a statute's enactment to confirm the legislature's intent. *Albertson's, Inc. v. City of Sheridan*, 2001 WY 98, ¶ 7, 33 P.3d 161, 164 (Wyo. 2001) (court may look to facts and circumstances surrounding statute's enactment to ascertain legislative intent). This is true even when we have concluded that the statute's language is clear and unambiguous. *See DiFelici v. City of Lander*, 2013 WY 141, ¶ 31, 312 P.3d 816, 824 (Wyo. 2013) (presuming legislature's knowledge of flooding risks and the associated costs of that risk in interpreting Wyoming Governmental Claims Act).

[¶21]  By authorizing the Department of Administration and Information to promulgate rules establishing not only procedures for inspection of electronic records, but also fees, costs, and charges for the inspection of electronic records, the legislature has further affirmed its intent with regard to electronic records.  That is, if inspection of an electronic record requires production of a copy of that record, the costs of producing that copy are to be borne by the party requesting that access.

[¶22]  The Tribune-Eagle offers several arguments against the interpretation we have given section 202(d)(i).  First, it argues this interpretation runs contrary to Wyo. Stat. Ann. § 16-4-204(a), which provides:

> (a) In all cases in which a person has the right to inspect and copy any public records he may request that he be furnished copies, printouts or photographs for a reasonable fee to be set by the official custodian. Where fees for certified copies or other copies, printouts or photographs of the record are specifically prescribed by law, the specific fees shall apply. ***Nothing in this section shall be construed as authorizing a fee to be charged as a condition of making a public record available for inspection***.

Wyo. Stat. Ann. § 16-4-204(a) (LexisNexis 2015) (emphasis added).

[¶23]  Citing the last sentence of section 204(a), the Tribune-Eagle argues the Public Records Act bars a public records custodian from charging for making any public record, including an electronic record, available for inspection.  We reject this argument because it fails to take into consideration the legislature's decision to treat electronic records separately and differently.  As we discussed above, sections 202(d)(i) and 204(e), the provisions that apply specifically to electronic records, allow a custodian to charge for inspection of an electronic record if that inspection requires production of a copy of the record.  Under our rules of statutory interpretation, a specific statute will control over a general one dealing with the same subject when they are in apparent conflict.  *Rock v. Lankford*, 2013 WY 61, ¶ 37, 301 P.3d 1075, 1085 (Wyo. 2013) (citing *Gronberg v. Teton County Hous. Auth.*, 2011 WY 13, ¶ 45, 247 P.3d 35, 45 (Wyo. 2011)).  Section 204(a) is a general provision, and we therefore give controlling effect to the charges allowed under the more specific sections 202(d)(i) and 204(e).[2]

---

[2] We do not have before us a case in which inspection of an electronic record is feasible without production of a copy of the record.  We therefore do not address how the question would be answered under those circumstances.

[¶24] The Tribune-Eagle next contends that reading section 202(d)(i) to allow charges for the inspection of electronic records can have a chilling effect on access to public records and is therefore contrary to our longstanding rule that the Public Records Act be liberally construed in favor of public access to government information. *See Aland v. Mead*, 2014 WY 83, ¶ 12, 327 P.3d 752, 759 (Wyo. 2014) (purpose of Wyoming Public Records Act is to maintain an open and accountable government); *Powder River Basin Res. Council v. Wyo. Oil & Gas Conservation Comm'n*, 2014 WY 37, ¶ 33, 320 P.3d 222, 231 (Wyo. 2014) (Wyoming Public Records Act is to be given a liberal interpretation in favor of disclosure). While this is a legitimate concern, so too is the concern regarding the demand public records requests can place on government resources. *See* Tae Ho Lee, *Public Records Fees Hidden in the Law: A Study of Conflicting Judicial Approaches to the Determination of the Scope of Imposable Public Records Fees*, 21 Comm. Law & Pol'y 251, 253 (2016) (noting the tension "between the guarantee of public access to government records and the financial burden on the government"). Ultimately, how these concerns are addressed and balanced is a policy question to be resolved by the legislature, and where the legislature has made its decision, as we have found in this case, we cannot ignore that policy choice in service of a rule of interpretation. *See Lance Oil & Gas Co. v. Wyo. Dep't of Revenue*, 2004 WY 156, ¶ 29, 101 P.3d 899, 907 (Wyo. 2004) (rejecting application of rule that tax exemptions must be strictly construed where legislative intent to allow exemption was clear); *Barlow Ranch, Ltd. P'ship v. Greencore Pipeline Co. LLC*, 2013 WY 34, ¶ 49, 301 P.3d 75, 91 (Wyo. 2013) ("It is not this Court's prerogative to ignore the legislature's policy decision.").

[¶25] As its final argument against allowing charges for its requested inspection, the Tribune-Eagle contends that the School District should not be permitted to assess a charge for inspection of the emails requested in this case because the request did not involve "constructing the record," as that phrase is used in Wyo. Stat. Ann. § 16-4-202(d)(i). We need not, however, address whether the phrase "constructing the record" means creating a new record, extracting and compiling requested records, or something else. We have already interpreted section 202(d) to require a public records applicant to bear the cost of producing a copy if the requested inspection requires production of a copy. It is undisputed that the Tribune-Eagle's request could only be accommodated by producing a copy of the requested emails, and we therefore have no need to address whether there may have been an alternative basis under section 202(d)(i), such as construction of the record, to allow the charges.

## B. Permissible Charges under Wyo. Stat. Ann. § 16-4-202(d)(i)

[¶26] The Tribune-Eagle next argues that if this Court interprets section 202(d)(i) to allow the custodian to charge the costs of producing a copy of an electronic record for inspection, those charges are limited to the direct costs of duplication, meaning the copy costs for a paper copy or the cost of a compact disc or other digital storage device if the

copy is in an electronic format. We find no such limitation in the plain language of section 202(d)(i).

[¶27] Section 202(d)(i) reads:

> The reasonable costs of producing a copy of the public record shall be borne by the party making the request. The costs may include the cost of producing a copy of the public record and the cost of constructing the record, including the cost of programming and computer services.

Wyo. Stat. Ann. § 16-4-202(d)(i) (LexisNexis 2015).

[¶28] The first sentence of section 202(d) states that the costs to be borne by the party requesting the record are the "reasonable costs of producing a copy." The second sentence of section 202(d) refers back to the costs specified in the first sentence and states what those costs "may include." We have held that a statute's use of the term "include" is significant:

> [T]he use of the word "includes" in a statutory context has specific implications: "The use of the word 'includes' is significant because 'includes' generally signifies an intent to enlarge a statute's application, rather than limit it, and it implies the conclusion that there are other items includable, though not specifically enumerated."

*RT Communications v. State Bd. of Equalization*, 11 P.3d 915, 922 (Wyo. 2000) (quoting *Bd. of County Comm'rs of Teton County v. Bassett*, 8 P.3d 1079, 1083 (Wyo. 2000)); *see also Mendoza v. State*, 2016 WY 31, ¶ 12, 368 P.3d 886, 892 (Wyo. 2016) (quoting *Yager v. State*, 2015 WY 139, ¶ 22, 362 P.3d 777, 784 (Wyo. 2015)) ("The word 'include' is 'ordinarily used as a word of extension or enlargement' and is not a word used to connote limitations.").

[¶29] Section 202(d)(i) requires the public records applicant to bear the "reasonable costs of producing a copy." The second sentence does not limit the costs but rather provides examples of the types of costs that may be included. We also find it significant that the first sentence of section 202(d)(i) refers to "reasonable costs," in the plural form. As this case illustrates, given the differences that can exist between the search parameters of the records request and the manner in which the records are stored, the costs involved in producing an electronic record may very well extend beyond the cost of the paper copy or digital storage device used for the copy, to include programming and other computer services. That the legislature used the plural of the term "costs," and that it referenced the cost of programming and computer services as examples of costs, indicates: 1) the

legislature's understanding that the costs of producing a copy of an electronic record are greater than the cost of paper or a digital storage device; and 2) its intention that all of these types of costs, to the extent they are reasonable, be included in the costs to be borne by the public records applicant.

[¶30] The Tribune-Eagle again argues against allowing costs beyond duplication costs on policy grounds. It points out that governmental entities have varying skill levels in maintaining electronic records and searching those records to respond to a public records request, meaning charges for the same type of records access may vary from entity to entity simply because one entity is more efficient than another. The Tribune-Eagle also points to the unfairness that can result when there are multiple requests for the same electronic record, with the result being that the first applicant pays all the costs, including labor costs, and the subsequent applicants pay only the duplication costs. We again do not disagree that this is a legitimate policy concern. As we noted above, however, these types of policy questions are for the legislature. For now, the legislature has decided that the limitation on the costs to be borne by the public records applicant under section 202(d)(i) is that the costs be reasonable, and we have no basis to substitute our own judgment for that policy decision. To the extent a public records applicant wishes to challenge the efficiency of a custodian in storing its electronic records and making them available for inspection, that challenge must be directed to the reasonableness of the charge imposed for access to the record.

[¶31] Because reasonableness is the limitation on the costs that may be charged a public records applicant under Wyo. Stat. Ann. § 16-4-202(d)(i), and the Tribune-Eagle has not challenged the reasonableness of the charge imposed by the School District in this case, we affirm the district court decision to allow the charge.

## CONCLUSION

[¶32] We hold that Wyo. Stat. Ann. § 16-4-202(d)(i) allows a public record custodian to charge for inspection of an electronic record if the inspection request requires production of a copy of the record. The limitation on the costs charged is that they be the reasonable costs of producing a copy. Affirmed.

12

**DAVIS, Justice**, dissenting, in which **FOX, Justice,** joins.

[¶33]  I must respectfully dissent.  After studying the Wyoming Public Records Act, I am convinced that it prohibits governmental entities from charging a fee for the inspection of electronic records.

[¶34]  To provide a complete picture of the situation, it is helpful to expand a bit on the undisputed facts of this case.  Members of the school board historically used their own personal email accounts for school district business.  At some point problems arose with this arrangement, and the district proposed to provide board members with district email accounts for district business.  However, the board members did not want separate accounts, and none were set up.

[¶35]  As a result, when the newspaper made its request for a little over two months of board emails, the district could only be certain that it could locate those emails which might have been sent to persons with district email accounts, which would be on the server if not deleted, and then would still be there for sixty days after being deleted.  It would not have been in possession of emails sent from the private account of a board member sent only to accounts of other board members.

[¶36]  The district therefore had to request that each board member forward emails during the relevant period from his or her personal account to the district.  In one case, a board member brought her laptop to the district office so that its information technology staff could locate the emails.

[¶37]  As to the emails that were on the district's server, the IT manager had only to develop a search string to locate the emails, although he had to refine the search and check it to make sure that it was producing the records he wanted to produce.  After all of the emails were gathered from the district's server and the board members, it was a simple matter to copy them to a compact disc.

[¶38]  The district has a policy which allows it to charge ten cents per page for documents and twenty cents per CD.  The policy also allowed it to charge $20.00 per hour for clerical time, $30.00 per hour for professional personnel, and $40.00 per hour for managerial personnel.  It advised the newspaper reporter who had sought the information by letter that it had a CD available upon payment of $110.00, which represented one hour of clerical time[3] and three hours of professional personnel time.  It did not attempt to impose a per page charge, or evidently, a charge for the CD.

---

[3] The district did not charge for the clerical worker's time spent contacting board personnel to notify them that the emails were needed, but did charge for the time she spent forwarding emails to the technology department, printing paper copies that were later shredded, and searching her own computer for relevant emails.

[¶39]  The newspaper had not asked for a disc or that copies be made, and it objected to the charge the district sought to impose to locate the emails which were or should have been part of its records.  If someone else asks for the same emails, the district would provide them for the cost of the compact disc.

[¶40]  Now that the stage is set, I turn to case law that governs issues arising under the Wyoming Public Records Act.  The intent of the Act is "to permit access to public records unless disclosure would inflict irreparable harm contrary to protected rights." *Houghton v. Franscell*, 870 P.2d 1050, 1052 (Wyo. 1994) ("The object of the public records act is disclosure, not secrecy.").  This Court has observed that "we would not look to the most general meaning of those terms and phrases,  but rather, would look to their meaning in the context of the statute and we would do so *a fortiori* in view of the liberal construction rules applicable to these statutes."  *Allsop v. Cheyenne Newspapers, Inc.,* 2002 WY 22, ¶ 23, 39 P.3d 1092, 1099 (Wyo. 2002).  We have further explained:

> By a liberal interpretation, it is only meant that words should not be forced out of their natural meaning and should receive a fair and reasonable construction so as to obtain the objects for which a statute is designed.

*Id.*, ¶ 10 n.2, 39 P.3d at 1095 n.2 (citation omitted).

[¶41]  Although imposition of a fee for a member of the public to inspect public records is not the same as denying access, imposing a cost for inspection could limit the access the Act was intended to provide.  While I have no reason to question the district's good faith, and can accept that it only wants to pass on the cost of responding to a request for electronic records, there can be no doubt that such fees could be used to discourage access.

[¶42]  The statute itself provides the answer as to whether the district could charge for inspection of the documents it retrieves for inspection or not.  The majority opinion suggests that the sections dealing with electronic records and the language prohibiting charging a fee for inspection of documents are somehow divorced from each other in space and time to such an extent that the latter applies only to paper documents.  However, both provisions were adopted in the same amendment in the 2002 Special and Budget Session:

> 16-4-202.  Right  of  inspection;  rules  and  regulations; unavailability.
>
> (d) If a public record exists primarily or solely in an electronic format, the custodian of the record shall so inform the requester. Electronic record inspection and copying shall be subject to the following:

(i) The reasonable costs of producing a copy of the public record shall be borne by the party making the request. The costs may include the cost of producing a copy of the public record and the cost of constructing the record, including the cost of programming and computer services;

(ii) An agency shall provide an electronic record in alternative formats unless doing so is impractical or impossible;

(iii) An agency shall not be required to compile data, extract data or create a new document to comply with an electronic record request if doing so would impair the agency's ability to discharge its duties;

(iv) An agency shall not be required to allow inspection or copying of a record in its electronic format if doing so would jeopardize or compromise the security or integrity of the original record or of any proprietary software in which it is maintained;

\* \* \*

16-4-204. Right of inspection; copies, printouts or photographs; fees.

(a) In all cases in which a person has the right to inspect and copy any public records he may request that he be furnished copies, printouts or photographs for a reasonable fee to be set by the official custodian. Where fees for certified copies or other copies, printouts or photographs of the record are specifically prescribed by law, the specific fees shall apply. Nothing in this section shall be construed as authorizing a fee to be charged as a condition of making a public record available for inspection.

2002 Wyo. Sess. Laws ch. 53, § 1 (underlining in the original indicates text added by the amendment).

[¶43] It is clear from the juxtaposition of these provisions in the amendment that the legislature was quite aware of the potential complications of the language it added in § 16-4-202(d). It added provisions which would allow agencies to compile data if they were willing to so, and to allow them to charge for gathering the requested information. On the other hand, it also added the provision in § 16-4-204(a) to make it clear that nothing it had said in the amendment changed the rule that an entity could not charge for inspection of any record.

The base public record – in this case the emails – must be available for free inspection.[4] If the newspaper had requested the district to prepare a report based upon the information in its database, it could have then charged for the labor required to make the compilation and the costs associated with it, if it wished to perform the task at all.[5] It could not, on the other hand, refuse inspection. The legislature could have, but did not, include authorization to charge for the reasonable costs of retrieval. *See* Ga. Code Ann. § 50-18-71(c)(1) ("An agency may impose a reasonable charge for the search, retrieval, redaction, and production or copying costs for the production of records pursuant to this article.").

[¶44] The majority concludes that the language in § 16-4-202(d) means that the legislature understood that certain kinds of record could only be made available by copying them, and so intended to allow a fee to be charged to produce a copy. The plain and contemporaneously enacted language of § 16-4-204(a) is a clear expression of legislative intent to the contrary. We presume that the legislature acts with full knowledge of existing law, and that it intends new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) (citing *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 36-37, 319 P.3d 116, 125-26 (Wyo. 2014); *Rock v. Lankford*, 2013 WY 61, ¶ 19, 301 P.3d 1075, 1080-81 (Wyo. 2013); and *Redco Const. v. Profile Props., LLC*, 2012 WY 24, ¶¶ 26, 37, 271 P.3d 408, 415-16, 418 (Wyo. 2012)).

[¶45] Accordingly, I can only conclude that the legislature anticipated that this Court would continue to construe the Public Records Act to favor disclosure without imposition of fees which could burden citizens' rights to access. It could easily have included language that made it clear that an entity could charge for inspection of electronic records, but instead it included language making it clear that no such fee could be charged, without expressly limiting the language to paper records.

[¶46] Beyond that, to suggest that the legislature intended to allow a governmental entity to charge for moving data to a location where it can be inspected—which is in my view what happened here—is contrary to the way things worked and still work in the paper world. The earliest version of the Public Records Act was adopted in 1969, when it is safe to say that most records were probably still in paper form. 1969 Wyo. Sess. Laws ch. 145, § 1 (codified at Wyo. Stat § 9-692.1 (1957)). That earliest version of the statute provided that copies

---

[4] The Act has always required that "[a]ll public records shall be open for inspection by any person at reasonable times, except as provided in this act or as otherwise provided by law . . . ." 1969 Wyo. Sess. Laws ch. 145, § 2; *see also* Wyo. Stat. Ann. § 16-4-202(a) (LexisNexis 2015).

[5] The district has a policy which indicates that it will not compile data, extract data, or create a new document to comply with a record request, as doing so would impair its ability to discharge its duties. It is expressly allowed by statute to decline to do the things listed in the policy by § 16-4-202(d)(iii). By virtue of the fact that the district did not invoke this policy, one can safely conclude that it considered the emails existing public records, and not a compilation, etc. Whether a custodian can simply declare prospectively that it will always be too busy to provide any data compilations is a question for another case and another day.

16

could be made at the public's request, as does the current statute. *Id.* at § 4; Wyo. Stat. Ann. § 16-4-204(a).

[¶47] It is useful to compare the process by which a paper public record had to be maintained and produced for public inspection before records were kept electronically.[6] Assuming that the entity did not simply allow members of the public to search its files and provide a copy machine for them to use, someone had to find a place to store the record – probably in a labeled file folder kept in a labeled filing cabinet. Of course, an entity could simply toss documents in an unorganized pile somewhere, but it would presumably keep its records in an organized manner for its own use. If a citizen requested to see the correspondence between board members and between board members and district employees for a month or so, some person had to locate the documents in question, which would naturally be easier if the records were kept in some organized fashion. The records would probably have had to have been brought to a location where the citizen could inspect them without interfering with the entity's ongoing activity.

[¶48] If the inspector wanted a copy of a document, someone working for the entity would have had to remove it from the folder, perhaps remove staples, copy the document, restaple it, return it to the file folder, and then return the document to the location where it was kept.[7] Operation of the copying machine would entail some expense. The process would have to be duplicated for each person who wanted a copy of the same document.

[¶49] Understandably, the original Public Records Act provided that the entity could charge a reasonable copying fee for that effort. Wyo. Stat. § 9-692.4 (1975 Cum. Supp. to 1957 Wyoming Statutes). However, the original legislation, and the amendments that followed, did not permit the entity to charge a fee for retrieving the information, bringing it to a location where it could be inspected, and returning it to storage.

[¶50] The process to retrieve the emails in this case can accurately be compared to the retrieval and transportation process for a paper record. The district chose to store documents on its email server and on the private email servers used by board members. It has never denied that these records fall within the scope of the Public Records Act, which defines the term "public records" to include "office files and memoranda," which in turn is defined to include correspondence, which the emails are. Wyo. Stat. Ann. § 16-4-201(a)(vi)(B). In order to make this information available for inspection, the district had to collect data it allowed to be stored as it was, transfer it to the same electronic file, and provide a means by which someone requesting inspection could view it.

[¶51] The majority's analysis strains the word "copy" when it considers that term to mean anything similar to what it meant in 1969. Moving the electronic data is less cumbersome

---

[6] The record tells us nothing about the extent to which public records are still kept in paper form, and the process would be the same as described to the extent they are.

[7] An entity might be understandably reluctant to allow a member of the public to disassemble, reassemble, and refile its paper files to copy them.

than it is to collect paper documents for inspection. Electronic documents can be searched electronically, which paper files cannot, unless of course they are first scanned into an electronic format and made text searchable. It is ironic that the majority's construction of the statutes in question allows a charge for locating and moving data in electronic form, while it would prohibit such a charge for moving information in paper form, regardless of how voluminous that paper information may be. As we have observed:

> Legislative intent, manifested in the plain language of the statutes, is the controlling consideration in our interpretation of them. This intent is the vital part, and the essence of the law. In keeping with the legislature's intent, we endeavor to give statutes a reasonable, practical construction. We do not construe statutes in a manner producing absurd results. Put another way, when a statute is as clear as a glass slipper and fits without strain, courts should not approve an interpretation that requires a shoehorn.

*In re RB*, 2013 WY 15, ¶ 17, 294 P.3d 24, 29 (Wyo. 2013) (citations and quotation marks omitted). Because we have interpreted the purpose of the Public Records Act to permit access, rather than to prevent it, we should be reluctant to resort to a shoehorn to allow governmental entities to shift the cost of their statutorily mandated operations to citizens who seek to learn what the entity is up to.

[¶52] Even if the term "copy" meant the same thing as electronically transferring information within the system, which it does not to me, that does not mean that it was necessary to transfer the data to a CD. This may have been more convenient for the district, but there were other options. It would certainly be impractical for many reasons to allow a citizen to use an entity's working computers to inspect electronic documents. However, no one has suggested a reason that the data sought to be inspected here could not have been transferred to a location where it could be examined at a public terminal, and it would not seem to be difficult to set up an inexpensive desktop computer to allow inspection. The terminal could be set up in such a manner as to limit access to the requested records and to prevent modification of the custodian's records. I do not believe this would involve "copying" as that word has historically been used in the Act, for reasons I have already explained.[8]

[¶53] The majority's decision will encourage governmental entities to keep their electronic records in disarray, rather than properly organizing them so that they can be inspected. In this case, much of the work to produce the emails was caused by the board members' use of personal email addresses, where official and perhaps sensitive information could have been

---

[8] The newspaper points out that in this day and age, users may not request either electronic or printed copies of records – they may simply photograph them using a stand-alone digital camera or a smartphone camera if they only require the information contained in the electronic document. Whether a custodian could prevent that to recover a copy charge is not an issue in this case.

commingled with personal communications.[9]  It was obviously less difficult for the district IT staff to search its servers to find official emails that fell within the relevant time period, and this process could have been simplified by issuing board members official addresses as the district planned to do at one point in time.

[¶54]  As the Ohio Supreme Court observed, "No pleading of too much expense, or too much time involved, or too much interference with normal duties, can be used by the respondent to evade the public's right to inspect and obtain a copy of the public records within a reasonable time."  *State ex rel. Toledo Blade v. Seneca Cty. Bd. of Comm'rs*, 899 N.E.2d 961, 971 (Ohio 2008).  The Court found that the custodian had "a duty to organize and maintain [the records] in a manner  in which they can be made available for inspection and copying." *Id.*  We should not presume that the legislature intended to adopt a statute which would allow public records custodians to do otherwise, particularly in light of the statute's express language.

[¶55]  Finally, the majority refers to the provision of a 2014 amendment to the Public Records Act which instructs the Wyoming Department of Administration and Information (A&I) to adopt uniform rules for inspection, copies, and production of records for the use of state agencies.  Wyo. Stat. Ann. § 16-4-204(e); 2014 Wyo. Sess. Laws ch. 109, § 1.  This statute has no direct application here, since the school district is not a state agency.[10]  The applicable statute would be Wyo. Stat. Ann. § 16-4-204(c), which provides that "[a]fter July 1, 2003, any fees or charges assessed by a custodian of a public record shall first be authorized by duly enacted or adopted statute, rule, resolution, ordinance, executive order or other like authority."[11]

[¶56]  Both of these provisions just authorize A&I and local governmental entities to make rules setting the amounts and conditions when fees can properly be charged.  This makes sense – there should be rules to provide for orderly inspection which will not disrupt government business, the cost and means of copying when copies are requested, etc.  The majority's conclusion that the statute intended to allow an entity to charge for inspection if inspection can only be accomplished by making an electronic copy, which I consider to be a mere transfer of data, finds no support in its plain language.  Moreover, no administrative agency or local governmental entity can adopt regulations which exceed their statutory authority, and the 2002 amendments described above prohibit a charge for inspection. *Qwest Corp. v. Public Service Comm'n of Wyoming*, 2007 WY 97, ¶ 3, 161 P.3d 495, 497 (Wyo. 2007); *Pedro/Aspen, Ltd. v. Board of Cnty. Comm'rs for Natrona Cnty.*, 2004 WY 84, ¶ 13, 94 P.3d 412, 417 (Wyo. 2004).

---

[9] We have no idea whether this occurred or not, because the emails are not of record, as the newspaper refused to pay for the disc the district made.
[10] *See* Wyo. Stat. Ann. § 1-39-103(a)(ii) and (vi) (LexisNexis 2015), defining the terms "local government," "state," and "state agency."
[11] As already noted, the district did adopt rules as required by this section.

[¶57]   I would therefore reverse the district court and find that the fee sought to be charged by the district was improper.