# IN THE SUPREME COURT, STATE OF WYOMING

## 2017 WY 26

**OCTOBER TERM, A.D. 2016**

**March 7, 2017**

IN THE INTEREST OF:  JB and TLW,
Minor Children.

TW,

Appellant
(Respondent),

v.

THE STATE OF WYOMING,

Appellee
(Petitioner).

S-16-0157

*Appeal from the District Court of Campbell County*
The Honorable Michael N. Deegan, Judge

*Representing Appellant:*
　　Lisa K. Finkey, Gillette, Wyoming.

*Representing Appellee:*
　　Peter K. Michael, Wyoming Attorney General; Misha E. Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Timothy W. Miller, Senior Assistant Attorney General.

*Representing Guardian ad Litem:*
　　Dan S. Wilde, Deputy State Public Defender; Aaron S. Hockman, Chief Trial and Appellate Counsel, Wyoming Guardian *ad Litem* Program.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   The juvenile court adjudicated TW a neglectful parent to his two children, JB and TLW.  TW appeals the decision, arguing that he could not be neglectful because he did not have physical custody or control of the children at the time the State alleged the neglectful behavior occurred.  We find that the applicable statutes do not require that a parent or noncustodial parent have actual physical custody or control of the children in order to be found to have neglected the children. Accordingly, we affirm the juvenile court's decision.

## ISSUE

[¶2]   TW raises one issue in this appeal:

> Whether the district court (sic) erred when it found that, even though [TW] did not have physical custody of his children, [TW] neglected his children pursuant to Wyoming Statute § 14-3-202(a)(viii)?

The State articulates a similar issue, although it unnecessarily expands on it, by stating:

> Neglect occurs when "those responsible for a child's welfare" fail or refuse to provide care necessary for the child's well-being. A parent is "a person responsible for a child's welfare." Can a juvenile court enter a finding of neglect against a parent when the parent did not have physical custody or control of the child when the neglect occurred?[1]

(footnote added).

## FACTS

---

[1] WRAP 7.02 does not require an appellee to state an issue at all, although doing so is the norm.  We recognize that appellee here may be attempting to frame a "deep issue" as suggested in *Mary's Bake Shoppe v. City of Cheyenne*, 2008 WY 116, ¶ 4 n.2, 193 P.3d 252, 255 n.2 (Wyo. 2008), and *Bodily v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2011 WY 149, ¶ 3 n.2, 265 P.3d 995, 1001 n.2  (Wyo. 2011).   However, expanded issue statements may or may not fit a particular case, and can require the Court to significantly rephrase to extract the true issues. *See* Tyler J. Garrett, *Anatomy of a Wyoming Appeal: A Practitioner's Guide for Civil Cases*, 16 Wyo. L. Rev. 139, 165 (2016) and *Travelocity.com LP v. Wyo. Dep't of Revenue*, 2014 WY 43, ¶ 4, 329 P.3d 131, 136 (Wyo. 2014).  Here, the State's expanded issue/argument invites consideration of the sufficiency of the evidence to support a finding of neglect, although TW did not raise that issue.

[¶3]     On December 22, 2014, family members reported to the Department of Family Services (DFS) that they were concerned AB (mother of the children) was using drugs and not providing adequate care for her children, JB, TLW and KB.[2]  DFS promptly assigned the case to investigator Dena Knox who met with JB and TLW's two paternal aunts, paternal uncle, and paternal grandmother on December 23, 2014.  At that meeting Ms. Knox learned that TW was incarcerated in a Department of Corrections treatment facility in Casper, Wyoming.  Paternal grandmother phoned AB, who then met with Ms. Knox and the family.  Ms. Knox told AB about the family's concerns, and asked AB to provide a urine sample for drug testing.  AB refused.  Ms. Knox learned AB was homeless, so she explained the importance of a stable home for the children.  At that point, AB agreed that the children would stay with paternal grandmother for five months so AB could get her affairs in order.[3]

[¶4]     On January 28, 2015, the State filed a neglect petition against AB.  The State alleged that AB failed to tend to her children's medical needs and was unable to care for her children because she was at times under the influence of methamphetamine and marijuana.  The juvenile court entered an order to appear, and required AB and TM (KB's father) to appear for an initial hearing.  TW, the father of JB and TLW, was still in the custody of the Wyoming Department of Corrections and was not ordered to appear.[4]  However, the record shows the State intended to serve him with notice of the petition and the order to appear, and his address was listed as a Department of Corrections transitional housing program in Casper.

[¶5]     Over the next several months very little happened in the case because the State was unable to serve AB with the petition.  On August 21, 2015, the State filed an amended neglect petition.  The amended petition contained the same allegations against AB, but also alleged that TW "has failed to provide adequate care necessary for the children's well-being, to wit:  is currently incarcerated/detained in the Wyoming penal system, making him unable to care for the children."  The State served AB with the amended petition and she appeared by telephone at an initial appearance held on September 24, 2015.  However, for unknown reasons the State did not serve TW and, thus, he did not appear.

---

[2] The record is not clear which family members contacted DFS about AB's behavior.

[3] Paternal grandmother had physical custody of the children until May 5, 2015, when the children were placed in non-relative foster care.

[4] The record is silent as to why TW was not ordered to appear even though it had not been alleged he had been neglectful in the original petition.  Wyoming law clearly requires that the order to appear "[b]e directed to the child's parents, guardian, custodian and the child's spouse, if any, and to any other person the court deems necessary[.]"  Wyo. Stat. Ann. § 14-3-413(a)(iii) (Lexis Nexis 2015).  Incarcerated parents can participate in juvenile hearings by telephone.

2

[¶6]    TW completed the Department of Corrections treatment program on July 29, 2015, and was paroled to the Adult Community Corrections (ACC) program in Casper that same day.  He remained there until September 23, 2015, when he "escaped" by walking away and leaving the program.

[¶7]    On December 23, 2015, the juvenile court held an initial appearance for TW, although at that time he still had not been served with the petition.  He had been arrested on December 17, 2015 in Gillette, Wyoming on charges of escaping from the ACC, and was being held in the Sheriff's custody, so he was brought to the hearing.  The juvenile court entered a denial of the allegations on behalf of TW at the hearing.[5]

[¶8]    On February 26, 2016, the juvenile court held a bench trial on the neglect petition. AB failed to appear for the trial, but was represented by her appointed counsel.  TW appeared with his appointed counsel.  The State presented testimony from Ms. Knox. Throughout direct examination the State asked Ms. Knox if either parent had provided shelter, meals, clothing, or medical or dental care for the children since December 23, 2014 (the date on which AB relinquished custody of the children), to which Ms. Knox answered in the negative.[6]   Ms. Knox also testified that TW did not have physical custody of the children at any time after December 22, 2014.

[¶9]    In closing argument, TW's counsel argued that the juvenile court could not conclude that TW neglected his children because he never had physical custody of his children during the time the State alleged he neglected them.  TW pointed out that he was incarcerated and AB and others had physical custody when the petition alleged he neglected his children.  Counsel specifically argued that only a "person responsible for a child's welfare" can commit neglect under Wyoming statutes, and that Wyo. Stat. Ann. § 14-3-202(a)(i) (LexisNexis 2015) requires that TW have "the physical custody or control of the child" before he can be considered "a person responsible for a child's welfare." The juvenile court disagreed with counsel's argument and would not accept the proposition that a parent, or in TW's case—a noncustodial parent—could escape the reach of the neglect statutes simply because he did not have physical custody or control of the children.  The court concluded that both AB and TW had neglected JB and TLW. TW filed a timely notice of appeal.

**STANDARD OF REVIEW**

[¶10] TW raises an issue of statutory interpretation.  We review questions of statutory interpretation *de novo*.  *CLB v. State*, 2016 WY 43, ¶ 21, 372 P.3d 185, 189 (Wyo. 2016).

---

[5] At this hearing, the juvenile court dismissed the neglect proceedings with respect to KB and she was returned to the custody of her father, TM.  TM was never a target of the neglect petition.

[6] Apparently Ms. Knox did not consider AB's action of placing the children with their grandmother the equivalent of providing shelter, meals or care.

3

**DISCUSSION**

[¶11]   Wyoming law defines neglect as:  "a failure or refusal by those **responsible for the child's welfare** to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being."  Section 14-3-202(a)(vii) (emphasis added).  The legislature has defined "**a person responsible for a child's welfare**" as including "the child's parent, noncustodial parent, guardian, custodian, stepparent, foster parent or other person, institution or agency having the physical custody or control of the child[.]"  Section 14-3-202(a)(i).  TW argues this definition requires that a person, institution, or agency listed in any of the categories of § 14-3-202(a)(i) have physical custody or control of the child in order to be considered a person responsible for a child's welfare.  Thus, because he did not have physical custody or control of the children when he was incarcerated, TW claims he could not, by the legal definition, be a person responsible for the children's welfare.  The State argues that the phrase "having physical custody or control of the child" simply defines which "other person, institution or agency" is included in this definition and the phrase does not apply to the categories of persons previously listed in the definition, i.e., "the child's parent, noncustodial parent, guardian, custodian, stepparent, foster parent."

[¶12]   When interpreting a statute, we seek the legislature's intent "as reflected in the plain and ordinary meaning of the words used in the statute."  *Butler v. State,* 2015 WY 119, ¶ 7, 358 P.3d 1259, 1262 (Wyo. 2015) (citation omitted).

> The first rule of statutory construction is that legislative intent, not a court's perception of fairness, controls. It is not the court's prerogative to usurp the power of the legislature by deciding what should have been said. The courts must follow, and cannot extend, statutory definitions.

*Seherr-Thoss v. Teton County Bd. of County Comm'rs*, 2014 WY 82, ¶ 20, 329 P.3d 936, 945 (Wyo. 2014) (quoting *Scott v. Scott,* 918 P.2d 198, 200 (Wyo. 1996)).

> "Where legislative intent is discernible a court should give effect to the 'most likely, most reasonable, interpretation of the statute, given its design and purpose.'"  *Adekale* [*v. State*], [2015 WY 30,] ¶ 12, 344 P.3d [761,] 765 [(Wyo. 2015)] (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 20, 50 P.3d 323, 329 (Wyo. 2002)).  In light of this objective, we have said:
>
> > We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and

4

sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction.

> *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014) citing *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 36-37, 319 P.3d 116, 125-26 (Wyo. 2014).

*Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie Co. Sch. Dist. No. One*, 2016 WY 113, ¶ 10, 384 P.3d 679, 683-84 (Wyo. 2016).

[¶13] In § 14-3-202(a)(i), the first use of the word "or" is significant. Prior to the use of the first "or" in the statute, the legislature listed several different enumerated categories of individuals who, by the very fact that they fit into one of those categories, inherently have responsibility for the welfare of a child whether the child is in their physical custody or not.[7] However, the categories that are listed after the "or"—other person, institution, or agency—are broad and have no inherent responsibility towards a child. Thus, the legislature modified which "persons, institutions, or agencies" fall into this category by requiring that they have physical custody or control of the child.

[¶14] In *Butler*, we interpreted a statute that was similarly constructed to § 14-3-202(a)(i). That statute defined "position of authority" as:

> [T]hat position occupied by a parent, guardian, relative, household member, teacher, employer, custodian or any other person who, by reason of his position, is able to exercise significant influence over a person[.]

*Id.*, ¶ 9, 358 P.3d at 1262; *see also* Wyo. Stat. Ann. § 6-2-301(a)(iv) (LexisNexis 2015). We explained that parent, guardian, relative, household member, teacher, employer, and custodian are all enumerated categories which must be separated from the catchall

---

[7] Whether a stepparent inherently has responsibility for the welfare of children not in the stepparent's physical custody is not an issue before us.

category of "any other person who, by reason of his position, is able to exercise significant influence over a person." *Id*., ¶ 10, 358 P.3d at 1262-63. We acknowledged that the distinction between the enumerated categories and the catchall category lies in the fact that the former categories are "already in a position of significant influence based on implicit social norms" and, therefore, the State did not have to prove that a defendant who fell into an enumerated category exercised significant influence over the victim. *Id*., ¶ 10, 358 P.3d at 1263.

[¶15]   To interpret the statute in the way TW proposes would stray from the legislature's intent and lead to absurd results. *See KP v. State*, 2004 WY 165, ¶ 22, 102 P.3d 217, 224 (Wyo. 2004) (a statute should not be construed in a manner producing absurd results). For example, a noncustodial parent would be absolved of a claim of neglect even if he or she had knowledge that the child was being neglected by the custodial parent and affirmatively chose to do nothing to remedy the child's living conditions. Furthermore, a parent would be beyond the reach of the neglect statutes if he or she leaves the children with a caregiver for a specified amount of time and fails to return when expected. The act of abandonment occurred when the parent failed to return; however, the parent did not have the physical custody or control of the child at that time. A logical reading of the statute indicates the legislature did not intend for abandonment under those circumstances to fall outside the realm of neglect.

[¶16]   When interpreting a statute, "[w]e are guided by the full text of the statute, paying attention to its internal structure and the functional relation between the parts and the whole. Each word of a statute is to be afforded meaning, with none rendered superfluous." *Seherr-Thoss*, ¶ 19, 329 P.3d at 945 (quoting *Rodriguez v. Casey*, 2002 WY 111, ¶ 10, 50 P.3d 323, 327 (Wyo. 2002)). If we were to accept TW's interpretation of § 14-3-202(a)(i), the entire list of persons preceding the first "or" in the statute would be meaningless. There would have been no need to list those persons who ordinarily have responsibility for a child's welfare if the requirement of physical custody and control applied to everyone. Instead, the legislature simply would have defined a "person responsible for the welfare of a child" as "a person, institution or agency having the physical custody or control of the child." Here, the legislature did not limit the definition to only persons having physical custody and control.

[¶17] TW argues that if the statute does not require that persons in the enumerated categories have physical custody and control, the neglectful actions of the persons who do have physical custody and control of the child could be imputed to the person or parent who does not have physical custody or control. We disagree. As we stated above, we must consider all statutes relating to the same subject or having the same general purpose and interpret them harmoniously. *Cheyenne Newspapers*, ¶ 10, 384 P.3d at 682. The legislature has defined "neglect" as: "a failure or refusal by those responsible for the child's welfare to provide adequate care, maintenance, supervision, education or medical, surgical or any other care necessary for the child's well being." Section 14-3-202(a)(vii).

6

"Failure" and "refusal" are not defined in the statutes, so we must apply the common and ordinary meaning of those words. *See Adekale v. State*, 2015 WY 30, ¶ 42, 344 P.3d 761, 770 (Wyo. 2015) (Unless otherwise defined by statute, terms do not require clarification because the legal meaning is not separate from the ordinary meaning).

[¶18] "Failure" is defined as the "omission of performance of an act or task." *Webster's Third New International Dictionary* 815 (3rd ed. 2002). To "refuse" is "to show or express a positive unwillingness to do or comply." *Id*. at 1910. Both terms at least imply that a person must have the opportunity to perform a duty or act before he or she can fail or refuse to comply or perform. An individual does not have an opportunity to act if he does not know that a need exists. Thus, in order for a noncustodial parent—whether he or she lives in a different town, state, or country voluntarily, due to military deployment, or any other reason—to be deemed neglectful, the State must prove that he had the knowledge and opportunity to act and he failed or refused to do so.[8] *See In re T.T.C.*, 855 A.2d 1117, 1120 (D.C. 2004), and *In re Kurt H.*, No. 2015-286-Appeal, 2017 WL 203644, at *4 (R. I. January 18, 2017).

## CONCLUSION

[¶19] Section 14-3-202(a)(i) does not require a child's parent or noncustodial parent, as TW was in this case, have physical custody or control of the child in order to be defined as "a person responsible for a child's welfare." The juvenile court correctly interpreted the statute.

[¶20] Affirmed.

---

[8] The allegations against TW could be read as a claim that being incarcerated *per se* constitutes neglect. Neither that issue nor the sufficiency of the evidence to show that TW had knowledge of the children's circumstances and had an opportunity to act is raised in this appeal.